## HUGH WHITEHEAD v. THE STATE.

No. 734.    Decided March 15, 1911.

Rehearing Denied April 19, 1911.

**1.—Rape—Sufficiency of the Evidence.**

Where, upon trial of rape, the evidence was sufficient to sustain the conviction, although conflicting, there was no reversible error.

**2.—Same—Imputing Crime to Another.**

Where, upon trial of rape, defendant contended that others were guilty of the crime, but there was no evidence whatever to justify such contention, there was no error.

**3.—Same—Charge of Court—Corroboration.**

Where, upon trial of rape, the defendant attacked prosecutrix' testimony as to the number of times the defendant had had intercourse with her, and the State was permitted to show that prosecutrix had made statements before out of court with reference to this matter confirming her testimony, there was no error in the court's limiting the same to purposes of corroboration.

**4.—Same—Charge of Court—Weight of Evidence.**

Where, upon trial of rape, the court charged the jury that if they had a reasonable doubt that defendant had had carnal intercourse with prosecutrix or that she was at the time under the age of 15 years, to acquit him, this did not assume that defendant had such carnal intercourse.

**5.—Same—Requested Charge—Reasonable Doubt.**

Where the requested charge, upon the question of reasonable doubt, was clearly embraced in the main charge of the court, there was no error in refusing it.

**6.—Same—Charge of Court—Limiting Testimony—Impeachment.**

Where, upon trial of rape, the testimony of several State's witnesses was not only in rebuttal to the defense testimony, but was largely original, tending strongly to show the defendant's guilt and corroborating the testimony of the main State's witness, there was no error in the court's failure to limit such testimony to the question of impeachment.

**7.—Same—Evidence—Bringing Child of Prosecutrix into Court.**

Where, upon trial of rape, the defense attempted to show that by the resemblance of the infant child to prosecutrix' father or her brother that one or the other of them was its father, and thereupon on cross-examination the child was brought into court by request of State's counsel and placed in the lap of prosecutrix without objection on the part of the defendant, whereupon State's counsel asked prosecutrix if that was her child and who was its father, to which she answered that it was her child and defendant was the father of it, there was no error.

**8.—Same—Other Transactions—Evidence—Bill of Exceptions.**

Upon trial of rape there was no error in not permitting prosecutrix on cross-examination by defendant to answer the question if her brother-in-law did not have intercourse with her about two years prior to the time she gave birth to a baby, besides the bill did not show the answer.

**9.—Same—Evidence—Other Transactions—Bill of Exceptions.**

Upon trial of rape there was no error in not permitting testimony for the defense that prosecutrix had stated to defendant's witnesses that her brother-in-law had had intercourse with her about two years before the birth of her child; besides the bill of exceptions was defective in not showing with sufficient certainty that prosecutrix had testified that the defendant was the only person who had ever had intercourse with her.

**10.—Same—Evidence—Consent—Impeachment.**

Where, upon trial of rape committed upon a female under the age of fifteen years, the defendant offered testimony of other acts of intercourse between prosecutrix and a third party alleged to have occurred some two years before the birth of prosecutrix' illegitimate child, the same was inadmissible either to show consent or to impeach the testimony of prosecutrix; the fact of intercourse at the time alleged in the indictment not being questioned.

**11.—Same—Evidence—Other Transactions.**

Upon trial of rape there was no error in excluding testimony that the father of the prosecutrix had had intercourse with a sister of prosecutrix some years before the alleged offense, in order to show that he was guilty of the alleged rape upon prosecutrix; besides the bill of exceptions was defective.

**12.—Same—Evidence—Imputing Crime to Another.**

Where, upon trial of rape, the sister of prosecutrix had testified that about the time alleged in the indictment the prosecutrix left her room at night and consorted with a man for about an hour, and when she returned and was asked by her sister who it was she was with, replied it was none of her business; that the witness had not called her parents' attention to this incident supposing that they would not have paid attention to it, there was no error in not permitting defendant to go further into this matter and show why the defendant's witness did not call her parents' attention to this matter.

**13.—Same—Evidence—Reputation.**

Upon trial of rape there was no error in not permitting defendant to introduce his bail bond, for the purpose of showing that his sureties were jurors upon the former trial and thus to show his good reputation in the community; the bill of exceptions not showing that said sureties were members of the jury on said trial.

**14.—Same—Argument of Counsel—Bill of Exceptions.**

Where, upon appeal from a conviction of rape, the bills of exception did not show the facts in connection with State's counsel's argument to which defendant objected, the same could not be considered; besides such argument was not objectionable when considered in connection with the statement of facts, if this were permissible; neither was there any request on the part of defendant to withdraw same from the jury.

Appeal from the District Court of Parker. Tried below before the Hon. J. W. Patterson.

Appeal from a conviction of rape; penalty, five years imprisonment in the penitentiary.

The prosecutrix testified that about the 25th of May, 1907, she, in company with her father, visited her brother-in-law, the defendant, who lived some distance from her parents' home; that her father stayed there with her about two days, and that they were assigned a room together in which they slept two nights in succession, but in different beds; that her father then returned to his home and she remained with her brother-in-law and sister about a week longer; that defendant and her sister had one child about two years old which was left in her care while defendant's wife went over across the road some hundred yards away to a neighbor to get some coffee or something; that this was about sundown, and that immediately after defendant's wife left the house defendant came to prosecutrix' room where she was

lying on her bed, not feeling well—the child being in the room—and told her to shut her mouth, and immediately lifted her clothing and had sexual intercourse with her, and then threatened to kill her if she ever told; that this occurrence lasted about five minutes, when shortly after the defendant's wife returned, but that prosecutrix did not tell her sister because of the threats of the defendant; that during her stay at defendant's house he had sexual intercourse with her at three or four different times; that one time she fastened the doors and windows to her room to keep him out, etc.; that she gave birth to a child on the 28th day of February, 1908, and that defendant was the father of same, as she had never had sexual intercourse with any other man.

The State also introduced testimony to the effect that defendant intimated to other men that he had had sexual intercourse with prosecutrix and invited them to have sexual intercourse with her; that while prosecutrix was in a family way, and was examined by a physician, defendant slipped about to hear what was being said and done, and afterwards expressed fears that he would be charged with the paternity of the child. The State also showed that the prosecutrix was born June 9, 1893; that she was at defendant's house at the time she testified she was there; that she did not tell anyone who was the father of her child until she told the foreman of the grand jury. It was also shown that at the time she went to visit the defendant's family she had just had her monthly sickness. The State further showed by the testimony of prosecutrix' unmarried sister that after the examination of prosecutrix by the physician the defendant was bothered, and among other things said that he would go to the penitentiary, but it would only be for two years, and that when he got out he would kill the Whiteheads; that he begged this witness to swear that the prosecutrix had her courses immediately after she left defendant's house, and that it was in the power of witness and defendant's wife to clear him. The State also showed that a few months after the prosecutrix had been at defendant's house on a visit defendant told her mother that prosecutrix had a fit one night while at his house, and that he had to get an axe to get into her room, etc.

The defendant's wife testified that a week or such matter after prosecutrix was at her home during the latter part of May, 1907, she and prosecutrix returned on a visit to their parents, and that on the first night they were there sleeping in the same room, prosecutrix slipped out of her bed and met a man outside in the yard, and went off with him, and after being out about an hour returned, and was asked by defendant's wife who it was she was with, when she replied it was none of her business; that in this connection prosecutrix had mailed a letter while at her sister's house to some man living at the postoffice near her parents' residence, but witness did not know who it was.

Defendant's wife also testified that defendant had no opportunity

to commit the alleged crime; that he was away at the time it should have occurred (this was corroborated by other witnesses), and that he could not have left her room without her knowledge; that she kept a light burning every night on account of her baby, and that defendant was constantly with her in the room during the night. She also testified that she had overheard her father and brother saying, during the examination of her sister by the physician, that they would lay the paternity of the child upon her husband. She also testified that after her husband was in jail her father tried to induce her to leave her husband and not testify for him. It is also shown by another of defendant's witnesses that the father of prosecutrix had attempted to hire him to become a State's witness.

The defendant admitted that prosecutrix visited at his house at the time she said she did, but he denied positively having had sexual intercourse with her at that time or any other time, and also denied making the statements attributed to him about having intercourse with prosecutrix and encouraging others to do so; he also denied making the statements to his sister-in-law about the paternity of the child, etc.

Among the many contradictions on both sides, it was shown by the defendant that the prosecutrix testified on a former trial that defendant had carnal intercourse with her only one time, whereas she swore on the trial at which defendant was convicted that defendant had intercourse with her several times. There was also testimony that the prosecutrix and her father had materially changed their testimony at the last trial from that which they gave on a former trial with reference to the time of the alleged rape. This, with the facts stated in the opinion, is a sufficient statement of the case.

*T. F. Temple* and *J. M. Richards* and *Preston Martin,* for appellant.—Upon the question of the insufficiency of the testimony: Allen v. State, 16 Texas Crim. App., 237; Gazley v. State, 17 Texas Crim. App., 267; Montresser v. State, 19 Texas Crim. App., 281.

Upon question of not admitting testimony to show that prosecutrix had carnal intercourse with other parties: Miller v. State, 72 S. W. Rep., 996, 7 Texas Ct. Rep., 324.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, JUDGE.—The appellant was indicted and convicted for rape on a girl less than fourteen years of age, charged to have been committed on or about May 28, 1907. He was given the lowest penalty—five years.

1. The appellant's first ground of complaint is in effect that the evidence is insufficient to sustain the verdict. We have thoroughly and carefully gone through the evidence several times, and have

reached the conclusion that the evidence is ample and the great preponderance of it fully sustains the conviction. We do not propose to give the testimony here. That will be for the reporter to give in reporting the case. In passing on the sufficiency of the evidence to sustain the conviction, this court should not and does not determine the issue of fact for itself. All it determines is whether or not there was sufficient evidence, if believed by the jury in the lower court, to sustain the conviction. The sufficiency of the evidence is a question of law that this court passes upon. It is not given the power nor authority to pass upon the weight of the testimony or the credibility of the witnesses. That is exclusively for the jury and lower court.

The record shows that there were many contradictions in the testimony of the various witnesses; some were supported, others disputed in material facts, by other witnesses. All of that was for the jury and the lower court.

One of the appellant's main contentions was that the father of the girl or one of her brothers was the guilty party, and that the child she had—the fruit of the rape—was not the child of the appellant but of her father or one of her brothers. On this point we will say that there is no testimony, either direct or circumstantial, in our opinion, which justifies any such contention, or which even raises a suspicion that either her father or brother was the guilty party.

2. Appellant next complains of paragraph 4 of the charge of the court, which charge is as follows: "The defense offered evidence of several witnesses as to what the witness Lottie Whitehead testified on a former trial of this case, as to the number of times the defendant had had intercourse with her, for the purpose of impeaching said Lottie Whitehead, the State was permitted to prove by the said Lottie Whitehead what she testified, that she told to Jim Wilson, the then county attorney of Parker County, as to the number of times defendant had had intercourse with her, for the purpose of corroborating her as a witness in this case; and this testimony of .the witness Lottie Whitehead, as to what she testified she told Jim Wilson at the time of the other trial of this case, was offered by the State for the sole purpose of corroborating the witness Lottie Whitehead, and you can not consider it for any other purpose, and you will not consider said evidence of Lottie Whitehead, as to what she said she told Jim Wilson at the time of the former trial of this case, for any purpose unless you believe the same corroborated her testimony given in this case before you; and as to whether the said testimony does corroborate the said witness you are the sole and exclusive judges;" because upon the weight of the evidence, is not upon any material issue raised by the evidence, was misleading to the jury in that it assumed that Lottie Whitehead told the truth in talking to Jim Wilson at the other trial and that her testimony being true corroborates her testimony given at the trial at this term of court; and that it was error for the court in said charge to assume to the jury that Lottie White-

head told the truth when talking to Jim Wilson at the former trial
as that was the province of the jury to decide whether or not she was·
telling the truth. It is well settled in this State that when a wit-
ness is thus attacked—as this record shows Lottie Whitehead was—
her testimony can be supported by proving what she had told before
the trial. This charge of the court is not subject to the criticisms
claimed against it and is substantially correct, and there was no error
in giving it.

3. · Appellant next attacks paragraph 2 of the court's charge, which
is as follows: "If you do not believe from the evidence beyond a
reasonable doubt that the defendant had carnal intercourse with
Lottie Whitehead and that she was at the time under the age of fif-
teen years you will acquit the defendant;" because it was misleading
in that it assumed that the defendant had carnal intercourse with
Lottie Whitehead at some time when she was under the age of fifteen
years and is upon the weight of the evidence given in the negative
form. It is not permissible to take separate paragraphs of a charge,
but the whole of the charge, especially on that subject, is to be taken
and considered together, and when that is done in this case, clearly
there was no error in this charge and it was not subject to the objec-
tions urged against it.

4. What we have just said of the preceding matter is applicable
to appellant's next complaint that the court refused to give his re-
quested charge to the jury, as follows: "The jury are instructed
that you are not required to believe that the defendant did commit
the act charged, but if you have a reasonable doubt whether or not
he committed the act you will acquit defendant." In addition, this
requested charge was clearly embraced in the charge of the court on
the same subject and there was no error in refusing this charge under
the circumstances.

5. The next complaint is that the court erred in not instructing
the jury that the testimony of the witnesses T. F. Pribble, Pinkney
Standley, Will Whitehead, Mary Whitehead, Mrs. R. N. Whitehead
and M. O. Holland, all of whom testified in rebuttal after the defend-
ant had introduced his testimony and he himself had testified, in
not limiting that testimony alone to impeaching testimony of the
defendant. The testimony of each of these witnesses not only dis-
puted the appellant in his testimony on material issues, but much of
their testimony was of independent facts tending strongly to show
that the appellant was guilty of the offense charged and the testimony
of each tended strongly to support the testimony of the witness
Lottie Whitehead, who testified positively and clearly to the charge
of rape by the appellant on her. The appellant did not request any
written charge on this subject. It would have been improper for the
court to have given such a charge limiting their testimony upon
this point, and, of course, no error was committed in not doing so.

6. Appellant's first bill of exceptions does not show clearly what

the matter objected to is. It appears therefrom that while Lottie Whitehead was on the stand being cross-examined by the appellant's attorneys they asked her if the child did not favor her father, and she answered that it did not. Thereupon the State's attorney asked the sheriff to bring the child before the jury. While the sheriff was gone for the child the witness Lottie Whitehead upon further examination by the defendant's attorneys testified: "The baby is red-headed and I am red-headed. I have one brother, Jim, and one sister who are red-headed. My father is not red-headed. Jim is at home. His eyes are blue and my baby's eyes are blue. I don't know what color my father's eyes are." Thereupon the sheriff arrived with the baby and placed it in its mother's arms, who was still on the witness stand, in the presence of the jury. Counsel for the State then asked the witness if that was her child. She said it was. He then asked who was the father of the child, and she said Hugh Whitehead. Appellant's attorney thereupon stated to the court: "I object to that as a conclusion. I object to them offering the baby in evidence and saying the defendant is the father of it." The court then announced: "If you object to the baby being here in the court I will have it taken out." The appellant's attorney replied: "I ask that the question be withdrawn from the jury." The bill shows the court then overruled the motion and the defendant's attorney said: "Note the exception; they offer the baby and ask who was the father of it." And the defendant's attorney then said: "I am not making any objection to that." The court said: "The baby will be taken out if you ask that it be taken out." The bill then proceeds that the defendant then and there excepted to the action of the court in permitting said baby to be in the lap of the prosecutrix while she was testifying in the presence of the jury and permitting her to testify that defendant was the father of the child for the reason the same was highly prejudicial to the defendant and calculated to prejudice the jury against the defendant. The court overruled defendant's objection to said testimony and proceedings and permitted the same to go to the jury as evidence, to which the appellant objected. The court in allowing the bill qualified it, or stated as follows: "The baby was not offered in evidence except in this way: It was brought into court and placed in its mother's lap without any objections on the part of the defendant, and if the defendant had objected to it being brought into court such objection would have been sustained; and the court stated several times, while the baby was in its mother's lap, that it would be taken out of the courtroom if anybody desired it, and the defendant did not request that it be taken out."

It seems from this that the appellant was attempting to show by resemblance of the baby to its mother's father, or her brother, that one or the other of them was the father of it and guilty of the rape upon the witness Lottie Whitehead. It seems further that they made

no objection to the child being brought in, seemingly desiring its presence for the purpose of showing its resemblance to the witness' father or brother. For some reason or in some way, not explained, the result of all this was not as anticipated by appellant's attorneys. It is certain from this bill, the substance of which we have given above, that there was no error of the court in connection with the baby being brought into the court and not taken therefrom, because the court says it was not objected to by the appellant at any time and that he stated repeatedly that if it was desired he would have the baby removed.

So far as the testimony of the witness that that was her baby and that the appellant was the father of it, there was no error in such testimony. Precisely such evidence as this in a seduction case was held to be proper evidence. Snodgrass v. State, 36 Texas Crim. Rep., 207.

7. The next bill shows that while the witness Lottie Whitehead was on the stand on cross-examination she was asked by the appellant if her brother-in-law, Brace Upchurch, did not have intercourse with her about two years prior to the time she gave birth to her baby, and if she did not tell the appellant's attorneys, T. F. Temple and Preston Martin, before the trial of this case the first time that the first person who ever had intercourse with her was her brother-in-law, Brace Upchurch, and became pregnant when she was only twelve years old, fixing the time, place and circumstances when this occurred—unnecessary to be detailed here—to which questions and answer thereto the State objected because the defendant was on trial for rape on the witness, who was under age of consent and before she arrived at the age of fifteen years; and because the time claimed by defendant that she stated in her conversations to the defendant's attorneys that Upchurch had intercourse with her was too remote. The court sustained these objections and did not permit the witness to answer them.

The next bill shows that the defendant thereupon offered to prove by the defendant's attorneys, Temple and Martin, the conversation with the said Lottie Whitehead in May, 1908, just before this case was tried the first time, and if permitted by the court would have testified that the witness in said conversation with them stated that Brace Upchurch, her brother-in-law, was the first person who has ever had intercourse with her and that had occurred about two years before the birth of her child, detailing the acts of the intercourse, unnecessary to detail here. The State objected to this testimony because it was too remote; that this was a prosecution of the appellant for rape on the witness, who was under the age of consent, and that if she had had intercourse with other parties it could not be used as evidence against the witness on the trial of this defendant. The appellant by the bill then further states: "That the defendant offered this testimony for the purpose of contradicting the witness

Lottie Whitehead, and for the purpose of impeaching her testimony when she swore that the defendant was the only person who ever had intercourse with her," and to show that the defendant was not the person who had intercourse with her, and that another person, said Upchurch, had intercourse with her. The court sustained the objections and excluded the proffered testimony.

Neither of these bills can properly be considered by this court. The first one for the reason that it is not stated what would have been the answer of the witness Lottie Whitehead to the question of whether or not her brother-in-law, Upchurch, had had intercourse with her about two years before the birth of the baby. She might have testified he did. The second one, which is based on the first, for the same reason and in addition, the second does not show with sufficient certainty that she had testified that the appellant was the only person who had ever had intercourse with her. This bill on this point being as follows: "And be it remembered further that the defendant offered this testimony for the purpose of contradicting the witness Lottie Whitehead and for the purpose of impeaching her testimony when she swore that the defendant was the only person who ever had intercourse with her." This by no means makes it clear that she had ever testified any such thing, but rather indicates that they were anticipating that she would so swear, or that if she swore on the subject, to impeach her testimony when she did swear that the defendant was the only person who had ever had intercourse with her. And also these matters in the bills are stated as objections, not as facts. Douglass v. State, 58 Texas Crim. Rep., 122, and authorities therein cited.

However, we do not base our decision entirely on the insufficiency of either or both of these bills of exception. This prosecution was for rape committed upon a girl not fourteen years old at the time it occurred. The question of consent can have no effect whatever upon the defendant's guilt. Even if she had testified in the most positive way that she had consented and that she was as much instrumental, or more so, than the appellant was in the commission of the act, he would, nevertheless, have been guilty. It has often been decided and is well settled in this State that previous acts of intercourse with the appellant are admissible when offered by the appellant only for the purpose of tending to show the consent of the woman at the time when the rape is charged to have been committed and the authorities uniformly restrict such testimony to acts of intercourse with the appellant alone. Lawson v. State, 17 Texas Crim. App., 292; Perfering v. State, 40 Texas, 473; Dorsey v. State, 1 Texas Crim. App., 33; Rogers v. State, id., 187; Jenkins v. State, id., 346; Mayo v. State, 7 Texas Crim. App., 342. A great many other cases might be cited, but we regard this as elementary in our State now.

We also regard it as well settled in this State that where the ques-

tion of consent can not be material as in cases of rape of a child under the age of fifteen years, testimony of other acts of intercourse with some other than appellant can not be proved by the appellant unless the fact of intercourse at all is questioned, or such evidence shows such act was at a time that such other person might be the father of the child. The fact of intercourse with Lottie Whitehead is shown without shadow of doubt by the birth to her of a child. The prosecutrix' act with Upchurch was claimed to have been two years before the birth of her child—a date making it impossible for him to be its father. Bice v. State, 37 Texas Crim. Rep., 43; Knowles v. State, 44 Texas Crim. Rep., 322; Bader v. State, 57 Texas Crim. Rep., 293. So in our opinion there was no error committed in refusing to permit any such evidence as shown by either or both of these bills.

8. The next bill shows that while the appellant's wife, Ella Whitehead, was on the stand testifying for him, she offered to testify and would have testified, if permitted, that before she was fourteen years of age her father raped her three separate and distinct times, each time a short period after the other; and the bill shows that the particulars of each act would have been testified to in detail by the appellant's wife. The bill states that the defendant's object and purpose in proposing to introduce this testimony by his wife, the sister of the prosecutrix, Lottie Whitehead, and the daughter of R. N. Whitehead, the father of both of them, was for the purpose of showing that the father had had intercourse with Lottie, her sister, who was living with him at the time the State claims appellant had intercourse with her and for the purpose of explaining why Ella Whitehead did not report to her father Lottie's conduct in being fast with men and boys and getting up at night and going out into the yard and meeting them. This testimony was objected to by the State because the appellant was charged with rape upon a female under the age of consent, and it made no difference if other parties had had intercourse with Lottie Whitehead, before she was fifteen years of age, he would be guilty of rape; which objections were sustained by the court and the evidence excluded.

The next bill shows that while the State's witness R. N. Whitehead, the father of the said witness Ella Whitehead and also the father of the prosecutrix Lottie Whitehead, was being cross-examined for the purpose of impeaching him and for the purpose also to show that he had been guilty of intercourse with his daughter Lottie and for the purpose of thereby showing that he might be the father of her child, the defendant asked and proposed to prove by him, if he had not had intercourse with his daughter, Ella Whitehead, the wife of the appellant, about four years before that time, when she was just thirteen years of age, and during the year just prior to the time she married the defendant. These three accused rapes, which appellant sought to ask him about, were the same that the appellant's wife, and

the daughter of R. N. Whitehead, had just proposed to testify about as shown above. The bill further states that the defendant's object and purpose in asking said witness said questions was to corroborate his daughter, Ella, and to impeach Lottie wherein she had testified that defendant was the only person who had ever had intercourse with her, and that defendant was the father of her child, the contention of defendant being that R. N. Whitehead, the father of Lottie Whitehead, is the one who had intercourse with his daughter, Lottie, and is in all probability the father of her illegitimate child instead of defendant. The State objected to this testimony because it was immaterial whether the witness R. N. Whitehead ever had intercourse with either of his daughters, Ella or Lottie, as this was a prosecution for rape on a female under the age of consent. The court sustained the objection and the defendant excepted.

We can not consider this bill for the reason that it does not state that the witness R. N. Whitehead would have testified to any such thing. On the contrary, the whole of it shows, in effect, that he would not have testified to any such thing. However, if we could consider this bill, even if the witness would have testified to any such thing, the testimony, under no phase of the case and under no circumstance, would have been admissible on the trial of this case for any purpose. What we have said and the authorities we have cited above are applicable to this.

How it can possibly be contended, and what possible connection there could be to show, that because R. N. Whitehead, some four years before the offense charged in this case, was committed, raped another party, and is therefore guilty of this, is inconceivable to us. It has been universally decided by this court and is now elementary that even the appellant could not be proven to have committed other crimes—whether like this one or not—for the purpose of showing that he was guilty of this, much less could it be shown that another party not on trial and not the defendant was the guilty party instead of the appellant by showing that the witness, some four years before this crime was committed, had himself committed a like crime, for the purpose of showing that he was the party who committed this crime. Merely to state the question is a complete answer thereto against the appellant.

9. The next bill shows that while the witness Ella Whitehead, wife of the appellant, was on the stand and after she had testified on direct examination for him as follows: "That on the Sunday night that she was down at Godley visiting her father and after she had gone to bed that night, she saw her sister Lottie get up and walk out into the yard and meet a man and walk off towards the lot with him; and be it further remembered, that on cross-examination the State's counsel asked the witness if she told her father of this at the time. She answered that she did not; and was then asked by the State why she didn't tell him, and she answered, 'I was afraid

he would get after me about it; that he would not believe anything I said; that he had seen her do things himself that she ought not to do, and never said a word to her. I know he would not believe me. He would have gotten mad at me. I don't suppose he would have gotten up and looked if I had told him. I know it was no good for me to say anything to him about it, as he did not care.'" The defendant offered to prove by her, as a further explanation why she did not tell her father, that she had some other sisters that had fallen and gone astray, and that her father knew that, and that Lottie had been sent home from witness' house the year before because she was conducting herself badly and that her father knew that; that the witness did not tell him about Lottie getting up in the night and joining a man outside, because he had seen her do things that she ought not to do; that her father had mistreated her, the witness, before she was married, forcing her to have intercourse with him when she was between thirteen and fourteen years of age. The State objected to this because the same did not furnish any reason or excuse and that it was immaterial and irrelevant and calculated to unduly prejudice the State's case, which objections were sustained by the court.

The witness, as shown by the bill, had already testified to all that was permissible on this subject and the court did not err in excluding the proposed testimony by her, as shown by this bill.

10. The next bill shows that appellant offered to introduce his bail bond in the case for the purpose of showing that several of the persons who had signed it were jurors upon the trial of this case the first time, for the purpose of corroborative evidence of the defendant having a good character and reputation in the community in which he lived. Upon objections by the State, this was properly excluded. However, this bill is not sufficient for us to pass upon it, even though we have done so, because it does not show that any of the sureties on said bond were former members of the jury which tried him, nor that his good character and reputation had been attacked. The bill does not show either of these things. Even if it had, it would have been improper to have admitted the testimony.

11. The next bill shows that when J. C. Wilson, Esq., the attorney who had been employed by R. N. Whitehead, the father of Lottie, was making his closing argument for the State, the following proceedings occurred: '"Where is the evidence of conspiracy? Where is it? Put your hand upon it. I tell you, men, if you call this conspiracy, and you should ever be so unfortunate, and I hope to God you never will be, as to have to bring your girl to the courthouse, who has been raped.' And be it remembered, that at this point the attorney for the defendant said: 'If the court please, that is an improper argument.' And be it further remembered, that said J. C. Wilson, Esq., thereupon: 'If you ever have to come to the courthouse to prosecute a man—it is perfectly proper.'

"And be it further remembered, that defendant's counsel there-upon said: 'No, it is not. It is improper for an attorney to make a personal application of the matter to the jury; what *they* would do. This jury would be incompetent to sit on the trial of a case of their own family. It is not proper and I take a bill of exceptions to it. They would not be competent jurors to try the case of one of their own family.'

"And be it further remembered, that said J. C. Wilson, Esq., continuing the closing argument for the State before the jury, said: 'If this is evidence of conspiracy, the fact that this poor old man, with a heart bleeding at every pore, would do all that he could do to bring the guilty man to justice, would see the witnesses, would notify them of the day set, when I would tell him to do it; if that is sufficient evidence of conspiracy, then if any of you men are ever so unfortunate as to come with one of your girls under age'—

"And be it further remembered that the defendant, by his attorney, then and there again excepted to the remarks of said J. C. Wilson, Esq., for the reasons that the attorney for the State should not make a personal application of a supposed case to the members of the jury, and that said remarks tended to prejudice the rights of the defendant before the jury.

"And be it further remembered, that the court said: 'All right, you may have your bill of exceptions.'

"And be it further remembered, that said J. C. Wilson, Esq., continuing his argument to the jury, said: 'When you come to the court and present into the jury, you say, 'Instead of taking this man's life I am going to let the law take its course; I am going to be a law-abiding man; going to resort to the courts of the country.' I will ask if they could not prove same conspiracy against you? If this is evidence of conspiracy, couldn't they prove it against you? If you resorted to the law, without taking human life? If you see fit to do as this old man has done, resort to the courts of the country, don't you suppose it would show up that you had employed lawyers or a lawyer? Don't you suppose they would show up that when you had heard of a man that had said something that would be strong corroboration, that you would go or send somebody to him? If you have, then the defendant himself, through his attorney would ask you the infamous, 'Didn't you hire so-and-so? Didn't you offer to pay so-and-so? and all that.'

"And be it further remembered, that the defendant by his attorney, then and there again excepted to the foregoing argument to the jury, for the following reasons, to wit: That such a presentation of supposable assaults that might happen to the homes and families of some of the jury was an improper personal appeal to the manly pride of each juror to protect the innocent daughters in their own families and was calculated to arouse the prejudices and passions of the jurors, inflame their minds against the defendant, and cause the

jury to lose sight of evidence submitted and upon which a verdict should be desired by the State.

"And be it further remembered, that defendant, by his attorney, then and there asked the court to withdraw the aforesaid remarks of the attorney for the State from the jury and instruct them not to consider the same, which motion the court overruled, to which action of the court the defendant then and there excepted and herewith tenders his bill of exceptions in this case, and asks that the same be signed, approved and made a part of the record in this cause, which is accordingly done."

The appellant did not request in writing a charge to the jury to withdraw any or all of these remarks. The bill is wholly insufficient in that it does not within itself show this court the facts of the case and the testimony of the witnesses and the attack that had been made upon them, or any of them, nor any such fact or circumstance as within itself, will show that the said remarks or argument of the attorney representing the State in any material way injured the rights of the appellant.

If it were permissible to go outside of the bill of exceptions for the purpose of showing that such remarks, under the attacks that were made on the State's case, and each of the witnesses and of the most outrageous crime that had been committed, it might not be difficult to show that the judge of the lower court did not commit any reversible error in not sustaining the appellant's various objections to the speech of the attorney for the State. We say this because the bill does not give us, of itself, sufficient information to rule otherwise than we do on this bill of exceptions.

12. The next bill of exceptions states that while the said Wilson was making the closing argument for the State, he said: "Ella Whitehead says that she was lying with her head to the foot of the bed, and Lottie gets up and goes out and joins a man, and Ella does not tell her father and mother because she knows she would not get up to see, and her father would not get up to see." The appellant objected to this on the ground that it was unfair to argue before the jury that the witness Ella Whitehead did not tell her father of seeing Lottie leave her bed one night and meet a man, and, therefore, the witness, Ella Whitehead, was not telling the truth in regard to the alleged acts of Lottie; that it was unnatural that the witness Ella would not tell her father and therefore she was not telling the truth, and defendant alleged, as a reason why said argument was unfair that the witness Ella had a good and sufficient reason for not telling her parents of the acts of Lottie, which reasons are shown to the court by the statement of facts herein and which were not permitted to go before the jury as evidence in this case and which evidence showing the reasons of Ella Whitehead in not telling her parents of the acts of Lottie on the night in question, had been offered by the defendant in this cause and had been excluded on

motion of the State, all of which is more fully set out and shown by the statement of facts herein filed. After the court had over-ruled the exception of the defendant, said Wilson in his closing argument to the jury, said: "You know the court permitted you to prove every reason you had." The defendant then excepted to said remarks on the ground that it tended to prejudice the defendant before the jury by intimating that the said Ella Whitehead had no reason whatever for not telling her father of the acts above mentioned of Lottie and the jury were, therefore, permitted to infer that it would have been most unnatural for the witness Ella not to have told her father of said acts of Lottie and that, therefore, Ella was not telling the truth; and for the further reason that the defendant had attempted to offer in evidence the reasons why said Ella did not tell her father, all of which was known to said counsel for the State, and for the further reasons that said statement to the jury was not a fact for, as fully shown by the statement of facts, the defendant was not permitted to show every reason of the witness Ella White-head. And defendant further objected to the action of the court in permitting the counsel for the State to argue before the jury that the absence of any reason in the record why the witness Ella White-head did not tell her father was a strong circumstance to discredit her testimony and asked the court to withdraw such argument from the jury and instruct it not to consider the same, which motion the court overruled.

An examination of this bill, the substance of which we have given above in full, will show that in and of itself it does not sufficiently disclose to the court the testimony or lack of testimony shown by the record so as to properly present it to this court and show any error therein. Reference is repeatedly made to the statement of facts without showing what the statement of facts shows upon that subject. As was said of the last bill of exceptions above discussed, we might say of this, too, that perhaps it were permissible to go to the statement of facts for the full information about this bill it might be amply shown thereby that the argument of the county attorney in the respects complained of was fully justified.

The appellant in this case did not request in writing a charge excluding these remarks of the county attorney. There is no error shown by this bill of exceptions which would justify us in reversing this cause.

There being no reversible error shown in this case, the judgment is affirmed.

*Affirmed.*

[Rehearing denied April 19, 1911.—Reporter.]