## FRANK TURNER V. THE STATE.

### No. 2914. Decided January 28, 1914.

**1.—Rape—Evidence—Confessions—Cross-examination.**

Where, upon trial of rape, it appeared from the record on appeal that the defendant, on cross-examination of the alleged injured female, deliberately brought out the confessions of guilt of the defendant for the purpose of supporting his contention that the father of the girl was trying to force defendant off his land and make him leave the country, there was no error in permitting the parents of prosecutrix who were present at the time of the alleged confession to testify in regard to what was said and done on that occasion, and that defendant admitted that he committed the rape on their little daughter, he not being under arrest.

**2.—Same—Evidence—Flight—Change of Name—Declarations of the Defendant.**

Upon trial of rape, there was no error in admitting in evidence the flight of the defendant, and the fact that he went under an assumed name and his declarations with reference thereto when he was not under arrest. Following Elsworth v. State, 54 Texas Crim. Rep., 38, and other cases.

**3.—Same—Evidence—General Reputation.**

Where defendant interposed the plea for a suspension of sentence and introduced evidence of his general reputation, there was no error in permitting the State to inquire into his habits and mode of life.

**4.—Same—Force—Charge of Court.**

Where, upon trial of rape upon a female under the age of consent, the court refused a requested charge to acquit defendant unless he used force, there was no error.

**5.—Same—Rule Stated—Force—Non-age of Female.**

Carnal knowledge of a female under the age of consent and not the wife of the person having carnal knowledge of her is rape, no matter what the circumstances, and the question of consent, force, threats or fraud is wholly immaterial. Following Whitehead v. State, 61 Texas Crim. Rep., 558, and other cases.

**6.—Same—Unnecessary Allegations—Surplusage.**

In a prosecution for rape upon a female under the age of consent, allegations that defendant did ravish or used force, threats, or fraud may be rejected as surplusage. Following Vaughn v. State, 62 Texas Crim. Rep., 24, and other cases.

**7.—Same—Reasonable Doubt—Charge of Court.**

Where, upon trial of rape, the court applied the rules of reasonable doubt between the different degrees of the offense, and gave the usual and customary charge on presumption of innocence, there was no error on that ground.

**8.—Same—Evidence—Declarations of Defendant—Duress.**

Where defendant himself injected the issue that the father of the injured girl whipped him in order to run him out of the country, and brought out his declarations of his admission of the crime, and requested no charge that defendant made these statements under duress, etc., there was no error, although the parents of the injured child were allowed to state their version of this transaction.

Appeal from the District Court of Coryell. Tried below before the Hon. J. H. Arnold.

Appeal from a conviction of rape; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was prosecuted and convicted of rape, and his punishment assessed at five years confinement in the penitentiary.

Gusta Poe, a ten-year-old girl, testified to facts showing that she had been raped by appellant, detailing all the circumstances. On cross-examination the appellant sought to show by this witness that her father was trying to make appellant leave the country, and all through the record an effort is made by appellant to show that the prosecution ·is a frame-up, instigated by the girl's father to get appellant off his land and out of the country. The State at this time had not offered nor attempted to show that appellant had made any confession, but on cross-examination of this witness the defendant elicited the following facts: That she had told her father about the matter, when her father went in the direction of where appellant was staying, and then, to use her own language: "The next time I saw papa was late that evening, and Mr. Turner was with papa at that time. Papa then told me to tell it right before Mr. Turner and mamma, and I did. My papa and mamma and Mr. Turner and I were all there. I told them just what I have told here. Mr. Turner looked pretty bad that night. He was pretty badly beaten up. My papa hit him while I was there near him. Papa would just hit him and say, 'Now, don't you see.' Papa did that when I told him what I did there after Mr. Turner was present. Mr. Turner was bleeding a good deal at that time. Bleeding in the face and blood all over his face and eyes. My papa did not tell me that he was beating the old man up but I saw papa hit him. Mr. Turner never said anything only papa asked him if it was the truth and Mr. Turner would not say anything and mamma says, 'Say yes,' and he said 'Yes.' Papa was 'laying' it on to him then. He was hitting him about that time. Turner begged mamma to get papa to quit beating him. My mamma did not try to get papa to quit beating the old man. Mr. Turner said that papa. was going to kill him. Mamma did not try to get papa to quit beating him up. Papa said he was going to kill the old man; mamma said she did not care if he did, and papa picked up a stick and commenced beating him and beat him a good while before the old man acknowledged to doing what I said he did. Mamma then took the stick away from papa and throwed it away. Papa beat him a good while before he owned up to it. He would not say 'Yes' at first. Turner did not say that he would confess to anything if papa would not kill him. He said papa was going to kill him and that is all he said then. I then left my papa there in the road. Mamma and ·I went on and Mr. Turner and papa went back

towards the bridge. Papa was not leading Turner and pushing him along as they went down towards the bridge."

This was the first witness placed on the stand, and none of this testimony was offered by the State, but elicited by defendant on cross-examination, and defendant was the one who injected this matter into the case. From the record it would appear he deliberately did so for the purpose of supporting his contention that the father of the girl was trying to force him off the land and make him leave the country, and that the charge of rape had been instigated by Gusta Poe's father for the purpose of giving him an opportunity of beating him up and driving him out of the country, and the case was tried in fact on that issue as made by defendant. Under such circumstances we do not think there was any error in permitting Mr. and Mrs. Poe to testify in regard to what was said and done on that occasion.

Appellant objected to Mr. and Mrs. Poe and Edgar Holt testifying that appellant on that occasion admitted he committed the rape on the little girl, on the ground that he was under duress, and it was not voluntarily made. It is not contended he was under arrest, but that it was forced from him, and the confession was made to save his life. There would be strength and force in appellant's contention if he had not been the first, in the cross-examination of Gusta Poe, to inject this matter into the case, but when he had elicited the matter from her to build a theory on, that the charge was a frame-up of the father to give him an opportunity to beat him and drive him out of the country, then the transaction just as it occurred might be detailed by the other witnesses.

Appellant escaped that night, and it is shown he fled the county, and was arrested in Waco, and when arrested he gave an assumed name. George Weathers, of the police force, testified: "I went to search for him (meaning defendant). I found the old man in the Cotton Belt bar on the corner of Third and Mary Streets. I had a description of the old man and I walked in by the bar and saw this man and I called him out by the side of the house and asked him where he lived, and he said at Waco, and I asked him how long he had been living in Waco, and he said twenty-five years, and I says what part of Waco and he said 'just anywhere,' and I says what do you do for a living, and he says, 'I work,' and I says who do you work for, and he said, 'I work out in the edge of the country and town,' and I says what is the man's name that you worked for and he studied a little while and says, 'I can't think of his name.'" The witness then said he had not yet arrested the defendant, but testified further as follows: "At the time I took him (meaning the defendant) out there I would not have let the defendant get away, if I could have helped it. That is what I had him for. And he says, 'My name is not Turner.' He had previously told me his name was John or Will Johnson, or something like that." In approving the bill the court says: "I refer to Weather's testimony in the statement of facts. He swore that at the time he had the conversation with the defendant in question, that he, Mr. Weathers, had on plain clothes and that he had not

arrested the defendant and had not informed him that he was an officer.".
As thus qualified there was no error in admitting the testimony under
all of our decisions.   Elsworth v. State, 54 Texas Crim. Rep., 38; Grant
v. State, 56 Texas Crim. Rep., 411; Hilcher v. State, 60 Texas Crim.
Rep., 180, 131 S. W. Rep., 592; Martin v. State, 57 Texas Crim. Rep.,·
264, 122 S. W. Rep., 558, and cases cited in sec. 221, Branch's Crim.
Law.

Appellant interposed a plea, praying for a suspension of sentence, and
introduced evidence of his general reputation.   Under such circum-
stances there was no error in permitting the State on this issue to inquire
into his habits and mode of life, and the bills on this question present
no error.

The rape in this instance was alleged to have been committed on a
girl under fifteen years, therefore, there was no error in refusing the
special charge requested presenting the issue that appellant could not
be convicted unless "he used force upon her.".   Force is not an issue in
this character of case, the girl being incapable of giving consent either to
rape or an assault to rape.   In an advance sheet of Mr. Branch's new
work, the Penal Code of Texas, chapter eight, we find the following rule
correctly stated:

"Carnal knowledge of a female under the age of consent and not the
wife of the person having carnal knowledge of her is rape, no matter
what the circumstances, and the question of consent or whether the
carnal knowledge was had by force, threats or fraud is wholly imma-
terial.   Anschicks v. State, 6 Texas Crim. App., 524; Mayo v. State, 7
Texas Crim. App., 342; Rodgers v. State, 30 Texas Crim. App., 510,
17 S. W. Rep., 1077; Whitehead v. State, 61 Texas Crim. Rep., 558,
137 S. W. Rep., 356; Vaughn v. State, 62 Texas Crim. Rep., 24, 136
S. W. Rep., 476; Hightower v. State, 65 Texas Crim. Rep., 323, 143
S. W. Rep., 1168; Vanderberg v. State, 66 Texas Crim. Rep., 583, 148
S. W. Rep., 315.

"If the female is alleged to have been under the age of consent at the
time defendant had carnal knowledge of her, an unnecessary allegation
that defendant 'did ravish,' or that carnal knowledge was 'by force,'
or 'by threats,' or 'by fraud,' may be rejected as surplusage.   Davis v.
State, 42 Texas, 226; O'Rourke v. State, 8 Texas Crim. App., 70; Fields
v. State, 39 Texas Crim. Rep., 488, 46 S. W. Rep., 814; Buchanan v.
State, 41 Texas Crim. Rep., 127, 52 S. W. Rep., 769; Gray v. State, 43
Texas Crim. Rep., 300, 65 S. W. Rep., 375; Taylor v. State, 50 Texas
Crim. Rep., 362, 97 S. W. Rep., 94; Vaughn v. State, 62 Texas Crim.
Rep., 24, 136 S. W. Rep., 476."

The only other exception to the charge is that the court erred in not
applying the rule of reasonable doubt to each specific offense mentioned
in the charge.   The court first submitted the offense of rape, and in-
structed the jury they must believe beyond a reasonable doubt the facts
constituting this offense before they would be authorized to convict, and
then following this paragraph instructed the jury:   "If you should have

a reasonable doubt of the defendant's guilt of the offense of rape, you will acquit of said charge, and then consider further whether or not he is guilty of the offense of an assault with intent to rape," and then instructs the jury fully on the law of assault to rape, and requires them to find such facts beyond a reasonable doubt before they would be authorized to convict. He then instructs the jury the law of aggravated assault as applicable to the evidence in this case, and applies the doctrine of reasonable doubt to that offense. In addition to all this, he then gave the usual and customary charge on presumption of innocence and reasonable doubt. Under such circumstances this complaint is without merit. The jury under these instructions find the appellant guilty of rape, and recommended that the punishment be not suspended, evidently finding the offense committed under circumstances showing no mitigation.

To our minds, the only serious question in the case is the question of admitting the statement made by defendant while he was being whipped by the outraged girl's father. Had not the defendant first made this proof and injected the issue in the case, a very serious, if not fatal, question would be raised. However, having himself made this proof by the little girl, and injected the issue in the case, and then the other witnesses allowed to detail their version on the issue of whether or not Mr. Poe was using this charge as grounds for driving appellant from off his land, and out of the country on account of his dislike for appellant, we have concluded that the court did not err in admitting the testimony, and the circumstances under which the statements were made by appellant would go to its weight and not its admissibility. If the appellant had requested a charge that if appellant had made the statements under duress, that is, to save himself from further castigation by an irate parent, then they would not consider same as any evidence of appellant's guilt of the crime of rape, or had he complained of the charge of the court for not so instructing the jury, we would feel inclined to sustain his contention. But, inasmuch as he did neither of these things, and first elicited evidence from the girl that her father had beat and whipped appellant on that occasion, and that when appellant appealed to Mrs. Poe to stop her husband, and in answer to her remark in reply, he admitted his guilt, when Mrs. Poe caused her husband to cease, and brought this whipping into the case to build a defense that Poe was trying to run him off the land, which effort he continued throughout the case by the introduction of other and independent testimony, the court's action in the premises presents no error.

The judgment is affirmed.

*Affirmed.*