Argued February 19; affirmed March 19, 1935

# STATE *v.* LaPLANT

(42 P. (2d) 158)

*John P. Hannon,* of Portland, for appellant.

*Joe P. Price,* Deputy District Attorney, of Portland (Lotus L. Langley, District Attorney, of Portland, on the brief), for the State.

KELLY, J. On the 16th day of August, 1933, Adrian L. French, a collector for the Piggly Wiggly Company, Multnomah county, Oregon, was held up at the point of a revolver and robbed as he was on the stairway leading from the loading zone to the platform of the warehouse of said company at 22d and Vaughn streets, Portland.

That morning he had collected the money and checks, of which he was robbed, for the Piggly Wiggly Company amounting in the aggregate to $1,573.50 of which approximately $900 was in money. In making his rounds for the purpose of collecting the same, he had used his own automobile. The robbery was effected by one man, who then compelled French to return to his automobile and deliver the keys thereto to a confederate, who had entered the car while the robbery was being perpetrated. The robbers drove off in French's car. The car was abandoned on Irving street between 23d and 24th streets, Portland in front of the Clifton Apartments at 2356 N. W. Irving street.

Defendants Clarence L. Copley and Raymond L. LaPlant were jointly indicted for the crime. Separate trials were had.

■ The first assignment of error is based upon the action of the trial court in permitting Mr. C. G. Stevens, a police officer, called by the state, to give testimony over the objection of defendant, concerning certain articles found in apartment No. 31 of the Arbor Court Apartments at 4th and Columbia streets, Portland.

It is argued in defendant's brief that these articles, consisting of two revolvers, an overcoat, a suede jacket, and a coil of rope, were found at a place with which appealing defendant had no connection and over which he had no control. While it is true that appealing defendant's codefendant Clarence L. Copley and Copley's

wife were living in those apartments, nevertheless there is evidence in the record to the effect that before the commission of the crime charged and only a few minutes afterward appealing defendant was in those apartments, that he had one of the firearms identified by officer Stevens in his possession and that later he commented upon the danger of being arrested by reason of wearing the suede jacket. We cannot agree with defendant in his contention that he had no connection with or control over the apartment where the Copleys lived and where the incriminating articles are said to have been found. We think that the record discloses that it was a rendezvous for both defendants herein.

Defendant cites the case of *State v. Beebe,* 66 Wash. 463 (120 P. 122), to this point. That was a case of homicide. In that case, the trial court permitted the state to introduce threats made by the codefendant not on trial in the absence of the defendant on trial and also statements made by the defendant not on trial in the nature of admissions of guilt. There the court say that there are no facts shown by the record indicating that appellant had anything to do with the homicide other than what occurred at the time of the shooting. In the case at bar, there is the testimony of Mrs. Muriel Webster to the effect that appealing defendant and his codefendant were jointly engaged in a campaign of crime; that together they planned the crime charged herein and pursuant to such planning they jointly committed it; that in its commission one of the guns in question was used and one of the defendants was wearing a suede jacket. Also, that, after committing the crime, they repaired to the apartments in question and divided the loot. No reversible error was committed by permitting the officer to testify concerning the articles in question.

■ The second assignment of error presents the question of the propriety of permitting officers Barker and Davis to testify that they found six shells in a pocket of a pair of trousers which was among appealing defendant's effects and which were brought from his room at the Lorraine hotel, at 13th and Alder streets, Portland, to the police station after said defendant's arrest. Officer Davis testified that when the defendant found that he was going to be held he asked if the officers were going up to the room, and, when advised that in all probability they were, defendant told the officer that his rent was up and asked the officer "to bring his (defendant's) things in".

When asked, on direct examination, whether he had authorized or directed the police or any one else to search his apartment, defendant testified that he had not. On cross-examination, defendant testified that his room rent was not due for 30 days; but he did not deny that he had told officer Davis that his rent was up or that he had asked the officer to bring his things in. In this state of the record, it may well be said that defendant requested the officer to take charge of his personal effects which were in the room at the hotel. Such a request, if voluntarily made, constituted a waiver of the constitutional immunity against unlawful search and seizure.

■ If, however, error was committed in admitting the testimony concerning the six shells under discussion, we are unwilling, in the state of this record, to hold that it was reversible error. The identification of defendant LaPlant, by Mr. French, the gentleman, who was robbed, is direct and positive.

Henry Mundlin, a young man, positively identified defendant LaPlant as one of the two men who abandoned the automobile which was stolen when the rob-

bery was committed. These men brought the automobile to a stop in front of the Clifton Apartments at 2356 Northwest Irving street where young Mundlin and his father were employed.

Mrs. A. McPherson, who at the time was one of the tenants at said Clifton Apartments, also identified defendant LaPlant as the person who got out of said automobile there. She saw but one person leave the car, and with commendable candor stated on cross-examination that there was a possibility that she could have been mistaken in her identification of the defendant on trial as being that person.

Besides the testimony of these identifying witnesses, there is the testimony of Mrs. Webster heretofore mentioned.

Opposed to the state's showing, there is only the testimony of witnesses Bond, Waters and Williamson to the effect that at about 10:30 or 11 a. m. of the day of the crime defendant LaPlant purchased a suit of clothes at Rosenblatts Clothing store at Broadway and Washington streets, Portland, and later in the day some alterations were made upon the trousers of said suit. Mr. Bond made the sale, Mr. Waters saw defendant in the store carrying the suit on a hanger and Mr. Williamson met the defendant when the sale was made and superintended the alterations. Mrs. Copley, the wife of appealing defendant's codefendant, contradicted much of Mrs. Webster's testimony and testified that at one time Mrs. Webster vividly described a winter which she claimed to have spent in Switzerland; that LaPlant then called Mrs. Webster a liar; and that afterward Mrs. Webster said to Mrs. Copley:

"* * * that she didn't have to take that off of any man and that she didn't intend for him to get away with it and that after she got some money from him,

which she needed, that he would pay for it and that she would see that he did.''

Thus it will be seen that the evidence of appealing defendant's guilt is convincing, and, at most, the evidence as to the shells was merely cumulative.

■ The third assignment is based upon the reception of evidence given by officer Davis to the effect that defendant stated that he was living at the Lorraine hotel under the name of Doug Malone. This was competent evidence and no error was committed by the court in receiving it: *State v. Whitson,* 111 N. C. 695 at p. 698 (16 S. E. 332); *People v. Cox,* 29 Cal. App. 419 (155 P. 1010); *Barron v. People,* 73 Ill. 256; *People v. Kelly,* 146 Cal. 119 (79 P. 846); *Turner v. State,* 72 Tex. Cr. R. 649 (163 S. W. 705); *Halfyard v. People,* 77 Col. 390 (237 P. 151); *State v. Ivey,* 200 Iowa 649 (203 N. W. 38); *Harlin v. State,* 100 Tex. Cr. R. 156 (272 S. W. 448); *People v. Arnold,* 199 Cal. 471 (250 P. 168); *White v. State,* 105 Tex. Cr. R. 169 (287 S. W. 273); *Commonwealth v. Luccitti,* 295 Pa. 190 (145 Atl. 85); *State v. Miller,* 164 Wash. 441 (2 P. (2d) 738); *State v. McTague,* 190 Minn. 449 (252 N. W. 446).

■ The fourth assignment is based upon the action of the court in permitting officer Davis to testify that when, or shortly after, defendant LaPlant was arrested said defendant told him in effect that he was not acquainted with any one in Portland, except a Mr. Malone, and that Malone had recently left surrendering his room at the Lorraine hotel to said defendant. In this respect the trial court committed no error: 1 Wigmore on Evid., section 276; Underhill's Crim. Evid. (3d Ed.) section 201; *Commonwealth v. Hadok,* 313 Pa. 110 (169 Atl. 111). The purported statement by defendant was so grossly at variance with the truth, and the truth was so incriminatory, that the statement could have had but

one object, namely, to enable defendant to escape the consequence of his crime.

The fifth assignment urges that the court erred in receiving the evidence of Muriel Webster to the effect that at the Arbor Apartments, Mrs. Copley and Mrs. Webster were listening to the radio and that the Piggly Wiggly robbery was reported. On direct examination, Mrs. Webster testified that the report over the radio indicated that the Piggly Wiggly holdup had occurred. The witness was then asked how soon it was after the first report that defendants arrived at said Arbor Court Apartments, to which witness answered: "Oh, I would say about fifteen minutes." The state contends that the purpose of referring to the report over the radio was to fix the time of defendants' absence from the Arbor Court Apartments and their return to it on the day when the crime was committed. There was nothing in the report which this witness recounted in her direct examination as having been heard over the radio which incriminated defendants or either of them or any one else. In effect, Mrs. Webster testified that on the morning of the 16th of August, 1933, the defendants were in her presence at said apartments; that they left the apartments and while they were gone the report of the holdup came over the radio. Conceding that this radio report was hearsay, it could not be held to be prejudicial. It was merely a statement that the Piggly Wiggly holdup had occurred. We are aware that to constitute a part of the res gestae this statement must have been made instinctively by a participant as a part of the event. (1 Wharton Criminal Evidence (10th Ed.) p. 490, section 262), and that the record discloses that it was merely a narrative of what had occurred. We think that, if it had been material, it should have been proved by the person who made it. However,

it merely repeated a fact which was not seriously denied, but which was proved by irrefutable testimony.

◾ Mrs. Webster further testified that when the defendants returned to the apartments, they repaired to the kitchen, and witness than heard "paper rustling, and clinking of coins or something", and as the defendants came out of the kitchen there was a further report over the radio that a car had been used, and defendant Copley then said to defendant LaPlant that "it was fast work that they didn't think they would find it quite so soon". When Copley made that statement, defendant LaPlant remained silent. The witness was asked: "What was that report that came over the radio?" To this, she replied: "For the detectives or the police that found it not to touch it until the fingerprint expert had gotten there." The events of the day, upon which these radio reports were made, were given by the witness in detail, even to the burying by defendants of the two revolvers received in evidence after having incased them in a rubber inner tube and tied the tube with a string furnished by the witness.

The radio report, which was received in the presence and hearing of defendants and which elicited the remark as above stated from Copley in LaPlant's presence and hearing to which LaPlant made no reply, was competent and no error was committed by permitting the witness to testify concerning it.

◾ Speaking broadly, statements made in the presence of a person accused of crime and not denied by him must be taken as adopted by him. The statement by radio supplemented by the statement by Copley and the silence of the defendant on trial constituted a circumstance for the jury to consider in determining whether the defendant on trial participated in the crime charged. It is true that the radio report alone would not have

been competent, but the statement by Copley could not be understood without it, and LaPlant's silence could be taken as assenting to what Copley said. See authorities cited in note to the case of *O'Hearn v. State*, 25 L. R. A. (N. S.) 542.

■ The charging part of the indictment refers to the appealing defendant as Raymond L. LaPlant, alias Percy Malone alias Jack MacLaren. Reference is also made therein to aliases of Copley. At the conclusion of the trial and before the case was submitted to the jury, defendant moved to strike out of the indictment these aliases. The denial of this motion is the basis for the sixth assignment of error. The learned trial judge instructed the jury upon that point as follows:

"This indictment, in its caption, charges certain aliases as having been used by the defendant. In this respect I instruct you that these are solely for purposes of identifying the defendant and are not to be considered by you, of course, as evidence of any fact at issue in the trial of this case or as constituting any other charge against the defendant."

No error was committed in that regard.

■ The sixth and seventh assignments, which were the last two, deal with requested instructions upon the subject of the defense of alibi. The instructions, which were given, stated the law on that subject, did not place the burden of proof upon defendant and were not prejudicial to defendant.

The judgment of the circuit court is affirmed.

CAMPBELL, C. J., and BELT and ROSSMAN, JJ., concur.