Argued August 22, affirmed September 21, petition for
rehearing denied October 17, petition for review
allowed November 21, 1972
(See later issue Oregon Reports)

## STATE OF OREGON, *Respondent, v.* HAROLD LYNN VAN HOOSER (No. 37599), *Appellant.*

501 P2d 78

J. *Marvin Kuhn,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Doyle L. Schiffman,* District Attorney, Roseburg, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Langtry and Thornton, Judges.

LANGTRY, J.

Defendant appeals from conviction and sentence

for rape and kidnapping. Former ORS 163.210, 163.-610. Defendant and one Kirk were accused of forcing a 12-year-old girl into their vehicle and each brutally and forcibly raping her, afterward letting her out of the vehicle near her home. Evidence from a medical examination of the girl later left no doubt of the brutality of the assault.

At the trial the victim identified defendant as having been the passenger in the vehicle and the one who forced her into it. However, it was dark and she did not see the face of the defendant, but did have a side and rear view of him and had felt his beard.

Defendant denied presence in the vehicle or participation in the crimes. He produced three alibi witnesses who placed him at the home of a friend from 3 p.m. to 9 p.m., except for "fifteen or twenty minutes." The crimes were committed at about 7:15 p.m. However, in its case in chief and in rebuttal the state produced evidence (1) from two high-school age youths that they had been given a ten-minute ride by Kirk and defendant at a time close to the time of the crimes, and who had seen defendant in the reflected light from a store at which they stopped, and who identified defendant in the courtroom; (2) from the owner of a nearby junkyard that Kirk and defendant had been at his yard seeking a vehicle part during the claimed alibi time; (3) from defendant's parole officer that defendant had told him four days after the crimes that he was out drinking with Kirk on the night in question; (4) from defendant's fingerprint in blood type O (the victim's type) found on the upholstery of the vehicle; and (5) from accomplice Kirk that defendant was with him the entire time, and participated in the crimes.

The defendant claims error in that (a) testi-

mony was admitted of defendant's reaction to his accomplice's accusation; (b) testimony of the accomplice was received that the accomplice had pled guilty to the crimes; (c) an instruction was given that every witness is presumed to speak the truth.

The latter is the question considered and rejected in *State v. Blocher*, 10 Or App 357, 499 P2d 1346, Sup Ct *review denied* (1972).

(a)   ORS 136.540 (2) provides:

"Evidence of a defendant's conduct in relation to a declaration or act of another, in the presence and within the observation of the defendant, cannot be given when the defendant's conduct occurred while he was in the custody of a peace officer unless the defendant's conduct affirmatively indicated his belief in the truth of the matter stated or implied in the declaration or act of the other person."

The questioned testimony is in Kirk's redirect examination by the district attorney:

"Q   [Mr. Schiffman]  While you were both together in front of officers, did you ever tell officers in front of the defendant here that you were both involved in this rape?

"A   [Mr. Kirk]  Yes.

"Q   And kidnap of the girl?
"A   Yes.

"Q   Did he say anything to you as a result of that?
"A   No."

The defense moved to strike the last question and answer on the basis of ORS 136.540 (2) and the motion was denied.

ORS  136.540 (2)  was  enacted  in  1957  (Oregon

Laws 1957, ch 567, § 1). Prior thereto, evidence of silence on part of a defendant when an accusation by an accomplice was made in his presence and the presence of police was admissible. *State v. LaPlant,* 149 Or 615, 42 P2d 158 (1935); *Johnson v. Underwood et al.,* 102 Or 680, 203 P 879 (1922). *See also,* Annotation, 115 ALR 1510 (1938).

The 1957 enactment had the effect of abrogating the rule in *LaPlant* in any situation where the defendant simply stands silent when the accusation is made. If he responds to what he has heard in manner that confirms the assertion, evidence of such response is admissible. *State v. Hammack,* 233 Or 128, 377 P2d 161 (1962) (defendant's affirmative conduct was making a written confession of the crime immediately after the accusation); *State v. Crater,* 230 Or 513, 370 P2d 700 (1962) (defendant nodded head in agreement, said "yeah" and "uh-huh").

In *State v. Lee,* 5 Or App 431, 485 P2d 660 (1971), we held that statements made by an accomplice to officers while defendant was asleep in their presence were not prejudicially received because there was no showing of prejudice, the substance of the statements having been immaterial to any issue in the case.

The state has cited us no authority to support its contention of no error. The clear import of the testimony was that defendant stood silent when the accusation was made. If the statute means anything, it was error to fail to accord defendant his statutorily prescribed right not to have the evidence received. The district attorney and the court were cited the statute as defendant's counsel objected. It clearly required exclusion of the evidence, yet the court allowed the

evidence to stand.[①] The only way the conviction can be allowed to stand is for us to determine that the error was not prejudicial. Oregon Constitution, Amended Art VII, § 3; ORS 138.230; *State v. Zadina,* 1 Or App 11, 457 P2d 670 (1969).

We assume prejudice has resulted from the error unless the record affirmatively reflects the contrary. *State v. Bishop,* 7 Or App 558, 492 P2d 509 (1972). The state has the burden of proving lack of prejudice. *Id.*

> "It may be contended, with some plausibility, that it would be far more difficult to demonstrate (if demonstration be required) that the *admission* of improper evidence did not prejudice a criminal defendant, than to demonstrate that such a defendant was not prejudiced by the *exclusion* of some evidence that might have been admissible * * *." *State v. McLean,* 255 Or 464, 473, 468 P2d 521 (1970).

> "* * * [I]n a case in which, despite some conflict in the testimony, there is substantial and convincing evidence of guilt and the error, if any, was either so technical in nature or so unsubstantial that this court can affirmatively find, as a practical matter, that there was 'little, if any, likelihood of having changed the result of the trial' * * *" 255 Or at 479,

the court may exercise its power under ORS 138.230 and Oregon Constitution, Amended Art VII, § 3, to affirm, notwithstanding the error.

The question whether we should affirm despite

---

[①] We note that similar erroneous "overkill" occurred in the same court with the same district attorney prosecuting in another recent case, and we allowed the conviction to stand because the other evidence against defendant was overwhelming. State v. Rook, 10 Or App 367, 499 P2d 830, Sup Ct *review denied* (1972).

the error is close. We would not do so, had not the physical evidence of defendant's fingerprint in blood taken from the vehicle been produced. It is evidence of the strongest sort to corroborate the other mass of evidence against defendant. Refusal to accord defendant his statutory right was a serious error, but there was little, if any, likelihood that the erroneous evidence affected the verdict.

(b) It is necessary to discuss the other assignment of error. Defendant contends that the motion should have been granted to strike testimony on redirect examination of Kirk, to the effect that he, Kirk, had pled guilty to the rape charge. In the preceding cross-examination no attempt had been made to impeach the witness. The court denied the motion because it said the testimony had a bearing on the witness' "interest and credibility."

The reason thus expressed by the court does not take into consideration that the state produced Kirk as a witness. It had no reason to and could not impeach his testimony. ORS 45.590; 45.600. *State v. Roisland,* 1 Or App 68, 459 P2d 555 (1969).

Further, the state does not now contend it was attempting to impeach the witness; rather, it contends the questioned testimony was to show the witness' lack of interest in the outcome of the case at bar. If this is so, it is arguable that the state was improperly attempting to bolster the credibility of its witness before any attempt had been made by the opposite party to impeach. 98 CJS 485, 486, Witnesses § 544 (1957):

> "Generally, a party is not permitted to add credit to his own witness by showing his lack of

interest or bias or relationship where the opposite party has not attempted to impeach him."[2]

We note this assignment of error and that it presents a close evidence question but do not decide it because it is unnecessary to our disposition of this appeal. Even if we were to conclude that the ruling was in error we would continue to believe that its cumulative effect with the other error discussed supra would have produced little, if any, likelihood of an effect on the verdict. The errors assigned which we have discussed concerned "* * * technical errors, defects or exceptions which do not affect the substantial rights" of the defendant. ORS 138.230.

Affirmed.

---

[2] It is also arguable that the state, in the instant situation, had good reason to add credit to Kirk's testimony. For an example of such reason, testimony of an accomplice "ought to be" viewed with distrust and ORS 17.250 provides that the jury be so instructed. Webster's New Twentieth Century Dictionary 911 (2d ed 1964) defines "impeach" in law as calling in question the "reliability" of a witness. Black's Law Dictionary 886 (4th ed 1951) says that to impeach is to "* * * dispute, disparage, deny, or contradict * * *." Under these accepted definitions, the instruction to the fact finder concerning the reliability to be accorded an accomplice's testimony amounts to impeachment by operation of law. Such being the case, it is logical that the state should be allowed to bolster the witness' credibility with competent evidence tending to support his reliability in the matter at issue, without waiting to learn whether the defendant will seek to impeach his credit, simply because it is known that the witness' reliability is in question.