## PATRICK BAKER V. THE STATE.

No. 16515.  Delivered March 14, 1934.
Rehearing Denied June 20, 1934.

The opinion states the case.

*McLean, Scott & Sayers,* of Fort Worth, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin for the State.

KRUEGER, JUDGE.—The appellant was tried and convicted of the offense of a conspiracy to commit a felony, and his punishment assessed at confinement in the State penitentiary for a term of two years.

The testimony adduced upon the trial, briefly stated, is as follows: On or about the 15th day of March, 1933, the appellant and another man, who represented himself as Dr. J. A. Pierce, appeared at the home of J. A. Webb in McLennan County, Texas, and told him that they had heard he had trouble with his glasses. Mr. Webb invited them into his home, showed them his glasses, and after inspecting same Pierce remarked that the trouble was not with his glasses at all, but that he had a growth on his eye which affected the nerve leading from the back of the eye to the brain and poisoned his system and caused him to have high blood pressure, which might result fatally any time. That said growth could be removed with radium but it was very expensive. Pierce then left the room and went to his car and during said time the appellant said to Webb, "I believe if you will ask the Doctor he will remove that right here as he is already fixed to do that work." When Pierce returned to the room Mr. Webb asked him if he couldn't do the work there, whereupon Pierce replied that he could but that he was not a member of the Medical Association of this State, and they might take his license away from him if they found it out, but if he would swear that he wouldn't tell anybody, not even his children, then he would do it. Webb promised Pierce that he would not tell any one. Thereupon, Pierce dropped some liquid in Webb's eye and apparently removed from the eye something which resembled the skin of the inside of an egg shell. When Mrs. Webb asked to see it he said, "No," that it was very poisonous, and he threw it into the stove. After this performance was completed, they asked Mr. Webb if he could see any better and when he said, "No," they said it would take some little time for his eye to get straightened out. For this service they charged Webb $1250.00. Webb wrote a check for

$1250.00 and offered it to Pierce, but Pierce declined the check and asked Mr. Webb to go to the bank and get the money, that he would rather have the cash. Webb then got in his car and the appellant and Pierce got in their car and started for Waco. Webb parked his car at one place and appellant and Pierce parked their car at another place. Webb then proceeded to the bank and cashed the check, and after having cashed the check he received a telephone call from his wife telling him that she had conferred with Dr. Woolsey over the telephone and asked Mr. Webb not to cash the check or pay the money to Pierce and the appellant. After having received this communication from his wife, Webb went to see a policeman whom he had known for some time and advised the policeman of what had taken place. The policeman then stationed himself inside of a store in front of which Mr. Webb had parked his car, while he, Webb, entered his car and sat down. In a few minutes, the appellant appeared and asked Mr. Webb for the money. Webb grabbed him by the lapel of his coat and accused him of being a scoundrel; the appellant jerked loose and ran, whereupon the policeman went in pursuit, arrested the appellant, took him to the city hall and preferred charges against him. Pierce, the pretended doctor, had disappeared, and, so far as this record discloses, was never seen or heard of by Mr. Webb or anyone in the county of McLennan. The State proved by Dr. Woolsey, after having qualified as an expert on the eye, ear, nose and throat, that he had examined Mr. Webb's eyes just prior to March 15 and found no growth on his eye ball. That he examined him since March 15th and found no trace of any skin having been removed from Mr. Webb's eye; that if anything had been removed, it would have left a scar; that there is no liquid known to medical science that could be dropped into a man's eye and pull off a little film of skin; that there is no such thing as liquid radium; radium is an ore and is mined out of the earth. The appellant did not testify nor did he offer any testimony refuting the charge or which explained, justified, or excused his acts and conduct at the time, before, or after the pretended operation.

The appellant's first complaint is that the court erred in overruling his motion to quash the indictment. We have carefully examined the indictment and believe that it is sufficient to charge the offense of having entered into a conspiracy to commit a felony, and therefore overrule the appellant's contention.

The appellant next complains that the court erred in over-

ruling his exceptions to the court's charge. We have examined the court's charge and believe that the same is an admirable application of the law to the facts and the same is not subject to the criticism addressed to it.

By bill of exception No. 3 the appellant complains of the action of the trial court in permitting the State to prove by Mr. Webb the following facts: "Dr. Pierce introduced himself to me and said, 'Mr. Webb, I hear that you have been having some trouble with your glasses.' Dr. Pierce looked at my glasses and threw them on the bed and said, 'Mr. Webb, it ain't your glasses at all.' He said, 'Mr. Webb, you are in a bad fix; your eye has something over it which is causing your trouble, causing you to have high blood pressure; you are liable to fall over dead any time; you ought to go to the sanitarium somewhere up north.' I asked Dr. Pierce several questions and he looked at my eye and said it could be taken out but it would be terribly expensive taking it out by radium," to all of which the appellant objected because it was an act or conduct of Dr. Pierce before a conspiracy had been proven and because it was irrelevant, immaterial, prejudicial and did not tend to connect the appellant with the offense charged, and because the acts and conduct of a coconspirator after the conspiracy had been entered into and the offense fully completed would not be binding on the appellant. We believe that the testimony was a link in the chain of circumstances tending to prove the allegations in the indictment of the acts alleged to have been performed by J. A. Pierce in furtherance of a common design to swindle Mr. Webb, and therefore was relevant and material.

Bill of exception No. 4 appears to us to be without any merit and therefore we do not deem it necessary to discuss it.

By bill of exception No. 6 appellant complains of the action of the trial court in permitting the State to propound to Dr. Woolsey the following question: "Doctor, assuming for the purpose of this question that a man who represented himself to be a doctor came to Mr. Webb and represented to him that he, Webb, had a skin or tissue on his eye ball which affected the nerve leading from the back of the eye to the brain and poisoned his system, which caused high blood pressure, that the skin or tissue could be removed by applying a certain liquid to the eye, and assuming that the liquid was applied and a skin or tissue removed from the eye ball, would such operation be reasonably worth the sum of $1250.00, although he was as rich as Jay Gould?", to which the appellant objected because it was

an assumption of facts not proven and a combination of questions to which the answer "no" could not properly be given; that it had not been shown that there was any fixed price for that character of work; besides, the State's evidence showed a contract as to the amount of the charge and because whether or not the price charged was reasonable or unreasonable could not be said to prove or tend to prove that the appellant and the man by the name of Pierce entered into a positive agreement to do the thing charged in the indictment, which objections were overruled by the court, and the witness answered, "No sir." The further question was then propounded, "What would that character of operation be worth?", to which the witness answered, "Well, it is not an operation to start with. It would be an enormous fee from any standpoint; that kind and character of service wouldn't be worth anything." The court qualified said bill by stating that the witness, Dr. Woolsey, had theretofore qualified as an eye specialist; that he had examined the eyes of Mr. Webb shortly before and since the alleged conspiracy purporting to operate on the said Webb; that none of the conditions were present in the eyes of the said Webb and that no real operation had been performed on the eyes of the said Webb and that the purported operation was not worth any sum, and no proof was offered by anyone that there was a real operation or that said purported service to the eyes of the said Webb was worth any sum. We do not perceive any error in the court's ruling. The State had already shown that no skin or film had grown over the eye of Mr. Webb and none had been removed by J. A. Pierce. Therefore, the pretended surgical service was not worth anything. However, proof that a charge of $1250.00 was made for said pretended surgical service brought the case within the classification of a felony. A conspiracy to swindle a person out of money or property of the value of less than $50.00 would be a misdemeanor, but when the value of money or property exceeds $50.00 it falls within the classification of a felony.

By bill of exception No. 7 the appellant complains of the action of the trial court in refusing to give his requested special charge directing the jury to return a verdict of not guilty. We are of the opinion that there was no error in the ruling of the court in this respect. It is true the case was one of circumstantial evidence, but we believe that the circumstances, together with the act and conduct of the appellant and the act and conduct of Pierce in the presence of the appellant, was sufficient to be submitted to and passed upon by the jury, and

we believe that the jury, under the facts, were justified in finding the appellant guilty as charged in the indictment.

Finding no reversible error in the record, the judgment of the trial court is in all things affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the judges of the Court of Criminal Appeals and approved by the court.

### ON MOTION FOR REHEARING

LATTIMORE, JUDGE.—In his motion for rehearing appellant urges that the indictment herein fails to allege that appellant knew the representations to be made by him to Webb,— were false and untrue. The charge against appellant was that he conspired and agreed with another to obtain from Webb $1250.00 in money, of the value of $1250.00, by means of false pretenses and devices, which are set out in detail in the indictment. It is also averred that appellant knew that Webb was not suffering from the ailment which appellant and another agreed to represent to Webb he was suffering from; also that appellant knew that Webb did not have a film, skin or tissue covering his eyeball as he and said other party had agreed to represent to Webb that he did have, and which the other party would represent that he could remove; also that appellant knew that the skin, film or tissue which the other party was to exhibit to Webb, was not removed from the eyeball of Webb; also that appellant well knew that said other party could not cure the eye of Webb; that he well knew no service could be rendered Webb by said other party, reasonably worth $1250.00.

We are unable to agree with appellant, and think that the indictment did aver that appellant knew that the representations which it was alleged the conspirators intended and agreed to make to Webb, would be false. We have again gone over appellant's bills of exception without being led to believe that any of them show error.

The motion for rehearing will be overruled.

*Overruled.*