OTIS ATWOOD *alias* W. M. WOOD v. THE STATE.

No. 24009. Delivered April 14, 1948.
Rehearing Denied May 19, 1948.

*Frank W. Steinle,* of Jourdanton, and *T. R. Odell,* of Haskell, for appellant.

28

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is swindling. The punishment assessed is confinement in the state penitentiary for a term of five years.

Appellant's first complaint relates to the court's action in overruling his motion to quash the indictment which contains six counts. The court submitted the case to the jury on the fifth count only. We have examined that count and deem it sufficient to charge the offense.

He next challenges the sufficiency of the evidence to justify and sustain his conviction.

The State's evidence shows that on the 4th day of March, 1947, appellant appeared at the home of W. C. Buzan in Atascosa County, Texas, and introduced himself to Buzan as Dr. Wood of St. Louis, Missouri. He stated that on the preceding day he had flown from St. Louis to Corpus Christi where he had performed an operation on some woman; that he was interested in an optical company and while he was down in this country he decided to make a routine check of people who were wearing glasses. He asked Buzan for permission to look at his glasses and after looking at them he said that his company owned the copyright on the same and inquired of the injured party from whom he had obtained them. When told by Buzan that he had obtained the same from Dr. Tidwell in San Antonio, appellant remarked that he knew Dr. Tidwell; that the glasses were guaranteed for five years and if the doctor charged him anything for exchanging the glasses to send the bill to him, appellant, at St. Louis, Missouri, and he would refund to him, Buzan, the amount of money paid to Dr. Tidwell. Appellant then inquired of Buzan if his wife wore glasses and being told that she did he asked if he might see them. They then went into the house and looked at her glasses. He inquired where she had obtained them and from whom. Upon being told from Dr. Rees of San Antonio, he remarked that he knew Dr. Rees. After more discussion, he looked at Buzan's eye and said, "You have a bad eye, let me look at it." After looking at it he remarked: "You have a soft cataract, you see double." He then took a little glass out of his pocket, held it in front of the injured party's eye and said, "Look at my eye." The injured party could see two eyes, one right over the other. He then placed the glass before the other eye and the injured party could see only one eye. He then said,

"You have a soft cataract and if you don't have it removed it is liable to kill you any minute." He further said, "I advise you to go to a good eye specialist and have that removed." He then remarked, "If I had you in my office in St. Louis, I could take that out in five minutes and it would not be any more pain than putting a drop of cold water in your eye. I would take it out with liquid radium." He then inquired of the injured party if he had even seen liquid radium and when told that he had not, appellant reached into his vest pocket, pulled out a small vial and said, "this is liquid radium. I had that left from an operation in Corpus Christi yesterday. I can take that out of your eye and it will not cause you any pain in the world, if you will not say anything about it as it is against the ethics of the medical profession to perform such an operation away from a hospital." He further told the injured party that cataracts cause strokes; that a man never had a stroke from high blood pressure; that it is caused by defective eyes. The injured party remarked that some of his family had died from strokes, and he asked appellant what it would cost to have the claimed cataract removed to which appellant replied, "I wouldn't charge you only just for the medicine. I couldn't charge you anything for my work." Appellant then began to prepare for the operation by asking for a towel and a glass of water. After dropping two or three drops of the claimed liquid radium into Buzan's eye and wrapping his head up with the towel, he waited two or three minutes and took the towel off. He then repeated the modus operandi and took a glass tube and began the supposed operation. A short time later he brought out a little scum which he, appellant, claimed was the soft cataract and remarked this is just as poisonous as it can be and dropped it into the fire. After he had dropped it in the fire he remarked, "I wish I had saved it and given it to a chicken. It would have killed it in a minute." He then told the injured party that the medicine which he used cost 397.50. The injured party told him that he did not have that kind of money at his home. The wife of the injured party said that she would give him a check but appellant replied, "I don't want any check, I am a stranger here and cannot get it cashed." He declined to accept a check. Thereupon, Buzan took the check and started to town to get it cashed, but on his way to town the engine of his truck began to miss and he stopped to change sparkplugs when appellant caught up with him and told him to drive the truck off the road and get into the car with him which he did. After they arrived in town and Buzan had cashed the check, they got into appellant's car and drove out on the highway where the injured party gave him the money at which time appellant admonished

him not to tell anyone about it. However, not many hours had passed before the injured party realized that he had been fleeced by a confidence man, and reported the matter to the officers, who a few days later arrested appellant at Rosenberg in Fort Bend County, Texas. In addition to the foregoing facts, Dr. Bleier testified that he examined the injured party's left eye and found no evidence of any cataract, nor anything that would indicate that a cataract had been removed from the eye; that when a cataract is removed from the eye, it leaves a scar. Dr. Greeman also testified that he examined the injured party's left eye and there had not been any cataract removed from the eye.

Appellant's plea was an alibi which he supported not only by his own testimony but by a number of witnesses. However, the injured party, his wife, his daughter, and Ramon Trevino identified him as the party who was at the home of the injured party on the day in question. This raised an issue of fact which the jury decided adversely to him and the jury's conclusion on a fact issue is binding on this court. See Baker v. State, 72 S. W. (2d) 296.

Appellant requested four special charges, two of which the court gave and two he refused. We do not think that the court erred in this respect since, in our opinion, the court correctly instructed the jury as to the law on every phase of the case as made by the evidence.

Appellant brings forward three bills of exception, Nos. 4, 5, and 6. Bill of Exception No. 4 is, in our opinion, deficient and presents nothing for review. It is largely in question and answer form and fails to show that any objection was interposed to the matters therein complained of. It simply recites that he tenders the bill of exception by reason of the claimed error. See Hancock v. State, 120 Tex. Cr. R. 162; Smith v. State, 133 Tex. Cr. R. 161 (109 S. W. (2d) 193); and Fite v. State, 139 Tex. Cr. R. 392 (140 S. W. (2d) 848).

Bill of Exception No. 5 is equally insufficient to show error since it fails to show any objection. It contains assumptions, deductions, and arguments, but no specific objection. See Hays v. State, 94 Tex. Cr. R. 498; Davis v. State, 96 Tex. Cr. R. 447; and Whitehead v. State, 61 Tex. Cr. R. 558.

Bill of Exception No. 6 is wholly deficient since it fails to show what State's exhibit No. 2 was or its contents. This court is not required to search the entire record in an effort to ascer-

tain what the objection related to. See Hodde v. State, 104 Tex. Cr. R. 577; Martine v. State, 131 Tex. Cr. R. 289; and Miller v. State, 112 Tex. Cr. R. 194.

No error appearing in the record, the judgment of the trial court is affirmed.

Opinion approved by the Court.

ON APPELLANT'S MOTION FOR REHEARING.

BEAUCHAMP, Judge.

In his motion for rehearing appellant insists that the court erred in submitting the case to the jury in that, while he gave a charge only under the fifth count of the indictment, he did not tell the jury that the other counts were withdrawn. In fairness, and for the purpose of placing the issues to be considered by the jury before them and to eliminate any confusion, this practice is recommended. We cannot say, however, that it is required.

Further contention is made that in the fifth count, under which appellant was convicted, there is no allegation that the prosecuting witness W. C. Buzan relied upon the false representations alleged, and that he parted with his money because of such reliance. The court's charge told the jury that the allegations in the fifth count were to the effect that appellant unlawfully, knowingly, and fraudulently, by means of false pretenses and devices and fraudulent representations known to him to be false, * * * did *induce* the said W. C. Buzan to deliver to him, the said Otis Atwood, alias W. M. Wood, and * * * did then and there by the same means aforesaid, *acquire* from the said W. C. Buzan $397.50 in lawful U. S. money, * * *." (Emphasis added.) We find no wording saying that Buzan did *rely* on such representation. We think, however, that the allegations that he *induced him* to deliver the money and that he, *by said means acquired said money from Buzan* made clear the charge lodged against the appellant. The question seems to have been settled at an early date and consistently followed. See Fairy v. State, 50 Tex. Cr. R. page 396, 97 S. W. 700; Bennett v. State, 253 S. W. 289; and Templeton v. State, 105 S. W. (2d) 1100.

Other questions in the cause were sufficiently discussed in the original opinion.

The motion for rehearing is overruled.