### J. H. BUCHANAN V. THE STATE.

No. 1672. Decided June 21, 1899.

**1. Rape—Indictment—Duplicity.**

An indictment for rape of a female under the age of 15 years, which charges that defendant did ravish and have carnal knowledge of her, is not duplicitous, but only charges two kinds of rape,—that is a rape with force and a rape without force.

**2. Same—Grand Jury.**

On a trial for rape defendant complained that the grand jury had heard illegal testimony, on account of which the indictment should be set aside. Held, whether the grand jury heard illegal testimony is a matter which can not be inquired into, nor would the same, if they had done so, render the indictment invalid.

**3. Wife as Witness—Cross-Examination.**

On a trial for rape, where the wife becomes a witness for her husband, the defendant, it is competent on cross-examination to ask her if she has not taken great interest in behalf of her husband in the defense. And if she had not asked the prosecutrix not to know anything when put upon the stand, and not to tell anything or swear to anything. And if she had any conversation with prosecutrix. Held, the questions were admissible on cross-examination.

**4. Evidence of Flight of Defendant.**

On a trial for rape it is competent to prove that a prior affidavit had been filed against defendant for incest with the prosecutrix, and that when it was sought to arrest him for said incest he attempted to flee and was overtaken and recaptured. Held, the evidence was admissible as tending to show defendant's guilt notwithstanding he had not been indicted for the rape at the time of his attempted flight.

**5. Evidence Elicited by Defendant.**

It is well settled that a defendant·can not offer testimony even of the most damaging character, and claim a reversal because of its admission.

**6. Illegal Evidence—Withdrawal of by Court.**

On a trial for rape, where defendant's counsel asked a witness if there was not a great prejudice against defendant on acount of his (defendant's) religion, and then asked witness if he knew to what sect or church defendant belonged, to which witness answered, "I think he belongs to that ——— gang that was run out of Oklahoma for seducing women and having caused several men to be killed up there;" Held, the instruction of the court to the jury to disregard this testimony with an admonition to the witness to confine his answers to the questions asked him, removed whatever of error or prejudice the witness' answers may have produced.

**7. Witness—"The Rule."**

It is within the sound discretion of the court to permit a witness who has not been placed under the rule, to testify.

**8. Venue—Proof of—Illegal Remarks of Bystanders.**

On a trial for rape a State's witness, on cross-examination, having stated that he did not believe the place of offense was in B. County (the county of the prosecution), whereupon a bystander in the audience spoke out in a tone to be heard by

the witness, jurors, and counsel, "It is in B. County, all the same," whereupon the court reprimanded said bystander and had him sworn to testify, and he did testify that the locus of the offense was in B. County; Held, no reversible error is made to appear.

**9. Rape of a Female Under Fifteen Years of Age—Charge.**

On a trial for rape of a female under 15 years of age, where the court instructs the jury, "Rape, as charged in the indictment, is the carnal knowledge of a female under the age of 15 years, other than the wife of the person, with or without her consent, and with or without the use of force, threats, or fraud," Held, correct and in direct response to the indictment.

**10. Same—Charge—Punishment.**

On a trial for rape of a female under 15 years of age not the wife of defendant, the court properly charged the jury, in effect, that if they found that defendant did ravish and carnally know such female, they must find him guilty and assess his punishment by death, or confinement in the penitentiary for life, or for any term of years not less than five, in their discretion.

**11. Requested Instructions.**

It is not error to refuse requested instructions which were covered by the main charge. And such instructions should always be refused when they are upon the weight of evidence.

APPEAL from the District Court of Baylor. Tried below before Hon. S. I. NEWTON.

Appeal from a conviction of rape of a female under 15 years of age; penalty, imprisonment for life in the penitentiary.

The most important part of the testimony is set out in the opinion.

*D. A. Holman* and *W. A. Jones*, for appellant.

*Rob't A. John*, Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of rape, and his punishment assessed at confinement in the penitentiary for life, and he appeals.

Appellant's first assignment of error complains of the refusal of the court to quash the indictment. The charging part of the indictment is that the defendant "did then and there ravish and have carnal knowledge of Emma Buchanan, a female under the age of fifteen years, not being the wife of the defendant." Appellant insists that the indictment should be quashed because the same is duplicitous. In Nicholas v. State, 23 Texas Criminal Appeals, 326, cited by appellant as authority on this proposition, the indictment read: "Did then and there unlawfully and feloniously in and upon one Leona Harris, a female person, and under the age of ten years make an assault violently and feloniously, and did then and there, by force and threats, against her will and without her consent, ravish, rape, and carnally know her, the said Leona Harris." The court in that case indicated that the indictment was probably duplicitous, but said that, in view of the facts that there was no motion made to quash the same, it would not be quashed on the ground after verdict. We do not think the indictment in the case before us is duplicitous. We hold

that where the indictment uses the words "ravish" and "carnally know," in connection with the allegation of the age of the female as being under the age of fifteen years, there are two distinct and separate characters and kinds of rape alleged; that is, a rape upon a female under the age of 15 years with force, and a rape without force. We note that the indictment herein follows the forms prescribed in White & Willson. See Wills. Crim. Law, and White Ann. Penal Code, secs. 1101, 1102: We think the indictment is good.

Appellant's second assignment of error complains of the action of the court "in sustaining the State's general demurrer to and dismissing appellant's special plea to the jurisdiction of the court, and to setting aside the indictment, as shown by bill of exceptions number 2." This bill complains of the action of the grand jury in receiving the testimony of Mrs. Mattie Buchanan, the wife of defendant, before said grand jury, and that this fact renders the indictment defective. This is not a matter that can be inquired into, nor would the same render the indictment defective. Code Crim. Proc., art. 559; Terry v. State, 15 Texas Crim. App., 66; Johnson v. State, 22 Texas Crim. App., 222. We notice that the bill of exception is signed by the court with this explanation: "I sign the bill with this explanation: Upon the motion to quash the indictment on account of defendant's wife being in the grand jury when they were deliberating, two of the grand jurors swore that she was not in there when they were deliberating, but they only had her summoned before them, and she testified before the grand jury, and they adjourned over to the next day, until she and her two sons could come before them." The statute requires that no one shall be present, except the grand jurors, while they are deliberating as to the advisability of finding the bill. It does not appear that appellant's wife was present, according to this explanation, while such was being done. As stated above, the fact that the grand jury may have heard illegal testimony would not vitiate the indictment.

In the third assignment of error, appellant complains of the action of the court "in overruling defendant's objection, and admitting the testimony of Mrs. Mattie Buchanan, the wife of defendant, as shown by bill number 3." It appears by said bill that, upon the trial of the case, "State's counsel, upon cross-examination, asked the witness, Mrs. Mattie Buchanan, wife of defendant, the following questions, to which she gave the answers thereto, over the objections of defendant's counsel both to the questions and any answer she might give: 'Have you not taken great interest in behalf of your husband in this defense?' A. 'I do not know that I have.' (2) 'Is it not a fact that you have gone to the prosecutrix and told her not to know anything when put on the stand, and not to tell anything while on the stand, or swear anything, in the town of Seymour, on yesterday or the day before, or words to that effect?' A. 'I have not.' (3)

41st Crim. Rep.—9

'Have you had any conversation with her?' A. 'Yes; on yesterday, at the hotel, but said nothing like that.'" It appears from the. foregoing questions and answers that the appellant's wife was not forced or permitted to answer anything against appellant. Furthermore, we think the questions were admissible on cross-examination.

Appellant's fourth assignment of error complains of the action of the court in refusing to exclude the testimony of J. B. Self and E. L. Craddock as to flight of defendant. These two witnesses testified to the fact that when they arrested appellant he attempted to flee, and did run some little distance, and was overtaken and recaptured. It is well settled by this court that flight, when an accusation is made against a party, is admissible, as touching the guilt of the party; and whether the technical offense is named by filing a prosecution or not is immaterial. In other words, because appellant was indicted for rape, and the affidavit had previously been filed against him for incest, and the flight was made during the pendency of the affidavit charging him with incest, and before indictment for rape, would not affect the admissibility of the evidence going to show the flight of appellant. Flight is admissible as a criminative fact on the ground of motive and intent, and to show appellant's guilty participancy in the offense. · The technical name of that offense would certainly not affect the admissibility of the testimony. Wait v. State, 13 Texas Crim. App., 169; Williams v. State, 22 Texas Crim App., 497.

Appellant's fifth assignment of error complains of the court's action in failing to exclude the testimony of Jack Bolt as to what Quitman Buchanan told him, as shown by bill number 5. The court's explanation to this bill shows that the testimony was adduced from the witness by appellant's counsel, and was made in response to questions asked by appellant's counsel. It is well settled that appellant can not offer testimony, although of the most damaging character, and then claim a reversal of the case because of its admission.

Appellant's sixth assignment of error complains of the action of the court in permitting R. H. Payne to testify to immaterial issues in defiance of the rule, as shown by bill number 6. This bill discloses that the witness R. H. Payne was asked by appellant's counsel "if it was not a fact that there was a great prejudice against defendant in the community in which he lived, and shared in by himself, on account of his religious belief or profession, to which the witness answered, 'I don't think they have any sympathy with him or respect for them.' 'Do you know to what sect or church he belongs?' To which he answered, 'I think he belongs to that —— gang that was run out of Oklahoma for seducing women and caused several men to be killed up there.' Thereupon the court instructed the jury to disregard that testimony, and admonished the witness to confine his answers to the questions of counsel, and to answer to what sect or creed he belonged, if he knew. And he answered, he did not know." While

we think that the answer of the witness was not in response to appellant's question, yet we think the admonition of the court and his insistence that the witness should confine his answers to the questions of counsel, removed all the error or prejudice to appellant's rights that might have occurred from the answer of the witness. "Counsel for the State then asked him the following question, and elicited the answer over the objection of defendant's counsel, to wit: (1) 'Did you ever know him to teach Free-Loveism?' 'Yes, I have had religious discussions with him in which I thought he was for Free-Loveism.' (2) 'Did you ever hear him profess to have power to heal sickness by laying on of hands or rubbing persons?' 'Yes.' (3) 'Did you ever hear him say he had taught Emma how to cure persons in that way?' 'Yes.' (4) 'Did you ever hear him tell how Emma had cured him of some stomach or bowel trouble? If so, state how she did it.' 'Yes; I heard him say that, when he was complaining of some bowel trouble, he had Emma to put both of her hands on his naked bowels and rub them clean down [emphasizing the last two words], and the pain disappeared.' To all of which defendant objected, because the witness, to testify at all, was in violation of the rule." Permitting a witness to testify who had not been under the rule is within the sound discretion of the court, and we do not believe that said discretion had been abused in this matter.

Appellant's seventh assignment of error complains of the action of court as shown by bill number 7, as follows: "While defendant's counsel was cross-examining the State's witness Luther Buchanan as to the venue of the alleged offense, and said witness had testified that he did not believe that the defendant's camp was on the Tom Ates place, in Baylor County, one R. H. Payne, seated in the audience, not subpœnaed or put under the rule, and one of the parties who got out the complaint and had appellant arrested, spoke out, in hearing of the witness, of the jurors, and of counsel, saying, 'It is Baylor County, all the same.' Upon objection by defendant's counsel that it was tampering with the witness and calculated to influence the jury, the court reprimanded the said R. H. Payne, and had him sworn to testify, to which appellant's counsel objected: (1) Because all the witnesses had been put under the rule at the request of the State, whereupon defendant's counsel demanded the strict rule, and thereupon all the witnesses for the State and defendant were called, sworn, and put under charge of the sheriff, with the usual instructions in such cases. (2) The said Payne, when sworn, was then interrogated by defendant's counsel, and testified that he had not been subpœnaed, or put under the rule; had been in the courtroom during the trial, and heard the witnesses testify to part of the testimony; that he was hard of hearing. (3) That he and Jack Bolt had come from Round Timber to Seymour in the night, and caused the complaint to be made upon which the defendant was arrested the next day; and that he was one of a party who had subscribed to pay as-

sistant counsel for the prosecution. Counsel for the State then
stated to the court that they expected to prove venue by the witness
who had been examined, but had failed to do so, and wanted to intro-
duce Mr. Payne to prove venue. Defendant objected further that,
as the rule had been invoked by the State, and enforced against this
defendant, he insisted that it be enforced against the State. The
court overruled the defendant's objections, and permitted said Payne
to testify, over defendant's objection, as follows: 'I am acquainted
with the Tom Ates place, which defendant is cultivating. It is in
Baylor County, above the Throckmorton County line.' On being
asked by Attorney Jones, 'Isn't it a fact that the Ates place is right
on the boundary line of Throckmorton County?' he answered, 'No;
it is half of a mile, or three-quarters, from it. I have seen the wagon
on the creek several times, but could not say either time was when
this occurrence was. I have seen Emma [prosecutrix] there. I
know where the county line is. It is about half or three-quarters of
a mile south of there.' To all of which defendant excepted, and ten-
ders this, his bill of exceptions." While it is true, as contended by
appellant's counsel, that the rule had been invoked, yet it has been
repeatedly held by this court that the trial court has discretion in
the premises, and may permit parties to testify who have not been
under the rule; and, in the absence of any proof in the record show-
ing prejudice to the rights of appellant, we will not review the dis-
cretionary power granted the trial courts in such matters. We have
carefully examined this bill of exceptions, and are constrained to say
that the evidence fails to disclose that the trial court abused his dis-
cretion in this instance. The declaration of the witness Payne, be-
fore he was made a witness, that the place where the offense is alleged
to have been committed was "in Baylor County, all the same," can
not operate a reversal of the case, because the court reprimanded the
witness, as stated above, and subsequently the witness was placed on
the stand and testified subsequently to the same fact. It was proper
for the State to prove venue as was done in this case. While it is
the better practice to keep the witnesses under the rule, where it has
been invoked, yet contingencies happen during the trial when it is
proper and necessary for the rule to be relaxed. We think this is
one of these contingencies.

Appellant's eighth assignment of error complains of the first sub-
division of the court's charge in defining rape. Said charge is as fol-
lows: "Rape, as charged in this indictment, is the carnal knowledge
of a female under the age of fifteen years, other than the wife of the
person, with or without her consent and with or without the use of
force, threats, or fraud." We think this charge is in direct response
to the indictment, and applicable to the facts of the case.

Appellant's ninth assignment of error complains of the action of
the court in the third subdivision of his charge. The substance of
the charge is that the jury are told that if appellant did ravish and

penetrate, and have carnal knowledge of Emma Buchanan, and tha at the time of such knowledge, if any, said Emma Buchanan was a female under the age of 15 years, and not the wife of appellant, they must find the defendant guilty as charged in the indictment, and assess his punishment by death or confinement in the penitentiary for life, or for any term of years not less than five, in the discretion of the jury. We do not see any error in this charge.

Appellant's tenth assignment of error is "that the court erred in his general charge, as shown in bill of exceptions number 10." We have examined the bill with great care, and have considered all the objections therein stated to the general charge; and we fail to find wherein the court has erred, but think the charge properly presents the law applicable to the facts in this case.

Appellant's eleventh assignment complains of the action of the court in refusing to give special charges numbers 1, 2, 3, 4, 5, and 6. We have also carefully examined these special charges, and believe that, so far as the same were applicable to the facts, they are covered by the main charge of the court. Some of the special charges are upon the weight of the evidence, and hence should not have been given.

Appellant's twelfth assignment of error is "that the verdict and judgment are not supported by the evidence, in this: The criminal act was testified to by the prosecutrix alone, unsupported by any other witness and uncorroborated by any other testimony. The testimony of the prosecutrix was inconsistent, contradictory, evasive, indefinite as to time and place, and showed the alleged offense under circumstances which render it improbable,—the wife of the accused being then within view, in the same tent; a little girl 9 years old in the same bed with them; and two brothers on the wagon within thirty feet of them; that no outcry or complaint was made at the time; concealment of it for six months; and continued friendly relations with the accused until and after he was arrested upon the charge of incest with her, and after she had become pregnant, she being 15 years of age." These were all the objections that could be urged with force by appellant's counsel to the jury in the trial of this case. The testimony of the prosecutrix is as follows: "I was 15 years old the 14th of last April. I don't know where I was born. The first place I recollect was Tupelo, Mississippi. Father got into some trouble and left, and I have not seen him since. Uncle Jess (defendant) came after me on the 27th of April, 1897, a week and a half after my father left. I would not go with him without my brother, and he got my brother to go. Uncle Jess' wife was my mother's sister, and Uncle Jess was my father's brother. On the last day of July, 1897, we went to the Choctaw Nation and stayed there for one month, and from there to Oklahoma, and from there here. We first went to the four-acre pasture east of the store at Round Timber, and stayed there from December 20th to January,

898, and while there defendant first treated me wrong. He said the Bible did not condemn a man for having more than one wife. He had intercourse with me in the tent. I don't know where my aunt was at the time. I don't remember what time of the day it was. I guess it was night. My aunt and defendant slept on a pallet in the same tent. I guess she was asleep at the time. Uncle Jess' little daughter, 9 years old, slept with me. I guess she was asleep at the time. He got up from his bed and came to mine and had intercourse with me in the tent, some time in December. I don't remember more than three times up to April. He had intercourse with me as often as he got a chance. I don't know how many times. As many as half a dozen. I missed my monthlies about two months ago." Being asked by State's counsel, "Has your uncle got you with child?" she answered, "I don't know. I did not miss my courses before I was 15 years old. Uncle Jess put his crop in in February. He carried me to his camp in the field where he and my brother and his boys were, to cook for them when they were at work on the Tom Ates place. It was about seven miles southeast of Tom Whitworth's. He did at different times have intercourse with me in the wagon. I went down there when we went to break land. I don't remember when, and don't remember where we planted corn," etc. While the testimony of the prosecutrix, as indicated, in some respects is uncertain, yet the jury have passed upon all the contradictions; and, in view of all the facts and the surroundings in this case, we do not feel disposed to disturb their finding. Gazley v. State, 17 Texas Crim. App., 267; Montresser v. State, 19 Texas Crim. App., 281.

Appellant's thirteenth assignment of error is, "that the verdict of the jury is contrary to the law," because the testimony of the prosecutrix is uncorroborated. As stated in the Gazley Case, supra, the testimony of the prosecutrix will be scrutinized more closely where the prosecutrix is not corroborated. But we wish to add here that the record before us discloses several circumstances corroborative of the prosecutrix's testimony, and, without reviewing the same, we simply refer to the statement of facts and say that there is ample corroboration of her testimony.

Appellant's fourteenth assignment of error contends that the verdict of the jury is unsupported because the evidence is insufficient to show penetration. We think the prosecutrix's testimony shows this.

Appellant's fifteenth assignment of error complains that the verdict of the jury is not supported by the evidence because the venue is not proved. Without recurring to the facts on this subject, the evidence shows that the venue was proved. Finding no reversible error in the record, the judgment is affirmed.

*Affirmed.*