ACCEPTED
03-15-00063-CR
5240283
THIRD COURT OF APPEALS
AUSTIN, TEXAS
5/11/2015 10:58:13 PM
JEFFREY D. KYLE
CLERK

No. 13-15-00063-CR

# In the Court of Appeals
# for the Third District of Texas at Austin

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
5/11/2015 10:58:13 PM
JEFFREY D. KYLE
Clerk

_____

EX PARTE JAMES RICHARD "RICK" PERRY
_____

APPEAL FROM THE DENIAL OF APPLICATION FOR WRIT OF HABEAS CORPUS

STATE OF TEXAS V. JAMES RICHARD "RICK" PERRY

D-1-DC-14-100139

IN THE DISTRICT COURT FOR THE 390TH
JUDICIAL DISTRICT, TRAVIS COUNTY, TEXAS
_____

# APPELLEE'S SUPPLEMENTAL BRIEF
_____

MICHAEL MCCRUM
TEXAS BAR NO. 13493200
DISTRICT ATTORNEY PRO TEM
TRAVIS COUNTY, TEXAS
700 N. St. Mary's St., Ste. 1900
San Antonio, Texas 78205
Tel: (210) 225-2285
Fax: (210) 225-7045

DAVID GONZALEZ
TEXAS BAR NO. 24012711
ASST. DISTRICT ATTORNEY PRO TEM
TRAVIS COUNTY, TEXAS
206 East 9th Street, Ste. 1511
Austin, Texas 78701
Tel.: (512) 381-9955
Fax: (512) 485-3121

ATTORNEYS FOR THE STATE OF TEXAS

# TABLE OF CONTENTS

Index Of Authorities ................................................................................. ii

Questions................................................................................................ vi

Summary Of Response.............................................................................1

Response ..................................................................................................2

    I.  Facts  developed  in trial court are relevant when the interpretation and
       meaning of the critical allegations in the indictment are in dispute...............2

    A.     Principles of justiciability require remand to the trial court. .....................4

         1. No factual record thwarts the justiciability of the overbreadth
         challenge ..........................................................................................6

         2. The vagueness challenge should also be reserved until after trial. ......10

    B.     Appellant's as-applied claims improperly rely upon an interpretation
        of what is alleged in the indictment.........................................................11

         1. Appellant must present evidence to be entitled to relief
         on his claims of Speech or Debate privilege. ...........................................15

         2. Appellant must present evidence to be entitled to relief
         on his claim of legislative immunity. ......................................................16

         3. Appellant must present evidence to be entitled to relief
         on his claim of separation of powers immunity. .....................................16

Prayer .......................................................................................................17

Certificate of Compliance ........................................................................19

Certificate Of Service...............................................................................20

i

# INDEX OF AUTHORITIES

**Cases**

*281 Care Comm. v. Arneson*,
  638 F.3d 621 (8th Cir. 2011) .................................................................................8

*Alabama State Fed'n of Labor, Local Union No. 103,*
*United Broth. of Carpenters & Joiners of Am. v. McAdory*,
  325 U.S. 450 (1945).................................................................................................4

*Barnes v. State*,
  116 S.W.2d 408 (1938).............................................................................................2

*Bd. of Trustees of State Univ. of New York v. Fox,*
  492 U.S. 469 (1989)..............................................................................................7, 8

*Bell v. State*,
  243 S.W. 1095 (1922)...............................................................................................2

*Broadrick v. Oklahoma,*
  413 U.S. 601 (1973)..............................................................................................7, 8

*Buchanan v. State*,
  52 S.W. 769 (1899)...................................................................................................2

*Colautti v. Franklin*,
  439 U.S. 379 (1979)...............................................................................................11

*Costello v. United States*,
  350 U.S. 359 (1956)..................................................................................................2

*Ely v. State*,
  582 S.W.2d 416 (Tex. Crim. App. 1979). ..........................................................10

*Ex parte Boetscher*,
  812 S.W.2d 600 (Tex. Crim. App. 1991). ..........................................................12

*Ex parte Bohannan,*
  350 S.W.3d 116 (Tex.Crim.App.2011) ..............................................................6

*Ex parte Heilman*,
  456 S.W.3d 159 (Tex. Crim. App. 2015) ...........................................................13

*Ex parte Nelson,*
  815 S.W.2d 737 (Tex.Crim.App.1991) (per curiam) .............................................6

*Ex parte Weise,*
  55 S.W.3d 617 (Tex.Crim.App.2001) ................................................................14

*Gallo v. State,*
  239 S.W.3d 757 (Tex.Crim.App.2007) ..............................................................6

*Gonzales v. State,*
  648 S.W.2d 684 (Tex.Cr.App.1983)...................................................................12

*Gravel v. United States*,
  408 U.S. 606 (1972)......................................................................................15

*Grayned v. City of Rockford*,
  408 U.S. 104 (1972)......................................................................................10

*Greenbelt Coop. Publ'g Ass'n v. Bresler*,
  398 U.S. 6 (1970)..........................................................................................8

*Guzman v. State*,
  955 S.W.2d 85 (Tex. Crim. App. 1997). ...........................................................11

iii

*Hampton v. State*,
   86 S.W.3d 603 (Tex. Crim. App. 2002) ...................................................................11

*Hoover v. Beto,*
   439 F.2d 913 (5th Cir.1971) ...................................................................................14

*Long v. State*,
   931 S.W.2d 285 (Tex. Crim. App. 1996). ................................................................10

*Meeks v. State,*
   692 S.W.2d 504 (Tex.Cr.App.1985).........................................................................12

*N. A. A. C. P. v. Claiborne Hardware Co.,*
   458 U.S. 886 (1982).................................................................................................9

*Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin,*
   418 U.S. 264 (1974).................................................................................................8

*Org. for a Better Austin v. Keefe*,
   402 U.S. 415 (1971).................................................................................................9

*Papachristou v. City of Jacksonville*,
   405 U.S. 156 (1972).................................................................................................11

*Patterson v. Planned Parenthood of Houston & Se. Texas, Inc.,*
    971 S.W.2d 439 (Tex. 1998) ...................................................................................4

*Phillips v. State*,
   362 S.W.3d 606 (Tex.Crim.App.2011). ...................................................................13

*Proctor v. State*,
   967 S.W.2d 840 (Tex. Crim. App. 1998). ................................................................13

*Regional Rail Reorganization Act Cases,*
   419 U.S. 102 (1974).................................................................................................6

iv

*Renne v. Geary,*
   501 U.S. 312 (1991)..........................................................................................7

*State ex rel. Watkins v. Creuzot,*
   352 S.W.3d 493 (Tex.Crim.App.2011) .............................................................6

*State v. Rosenbaum*,
   910 S.W.2d 934 (Tex. Crim. App. 1994), *on reh'g* (Dec. 6, 1995).......................14

*Stephenson v. State,*
   494 S.W.2d 900 (Tex.Cr.App.1973)..................................................................14

*Texas Ass'n of Bus. v. Texas Air Control Bd.*,
   852 S.W.2d 440 (Tex. 1993). ...........................................................................4

*Watts v. United States*,
   394 U.S. 705 (1969)..........................................................................................9

**Statutes**
TEX. PENAL CODE § 1.07(a)(9)(F).........................................................................2
TEX. PENAL CODE § 25.05(g)(2) .........................................................................12
TEX. PENAL CODE § 36.03(a)(1) ...........................................................................2

**Other Authorities**
13A WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE,
   § 3532.3, at 147 (2d ed.1984). ..........................................................................4
NICHOL, *Ripeness and the Constitution,* 54 U. CHI. L.REV. 153, 169 (1987).........4
TERRI R. DAY, *"Nasty as They Wanna be Politics:" Clean Campaigning and the
   First Amendment,* 35 Ohio N.U. L.Rev. 647, 652 (2009) .....................................8

**QUESTIONS**

1. How do actions in the trial court affect the justiciability of the issues on appeal?

2. When Appellant directs this Court to look to "the face of the indictment" to resolve his claims, what happens when the language in the indictment changes?

## SUMMARY OF RESPONSE

After Appellant was indicted, he filed a writ claiming the indictment was invalid because the attorney pro tem was not properly sworn into office. The parties exchanges briefs, but the matter was only resolved when the trial court conducted a hearing. The hearing took only a few hours. All necessary facts and evidence were introduced by the State. The trial court rendered an opinion. The matter was settled.

Though this writ also argues the State lacks authority to prosecute Appellant, the State should not be denied an opportunity to present its evidence. An indictment has never been the place for the State to plead its evidence, yet Appellant seeks final disposition in this case by challenging the sufficiency of the evidence alleged in the indictment.

Facts provide a fulcrum for legal leverage, and absent a record, everything that happens in trial court is both relevant and necessary for the justiciability of the issues on appeal. Certainly all of Appellant's as-applied challenges should necessarily rely upon factual evidence. Even the facial challenges could be better resolved if there were facts in the record. The resolution of these issues is made more difficult by the opposing sides' conflicting interpretations of what are merely hypothetical facts. To avoid piecemeal litigation, principles of justiciability warrant remand to the trial court.

1

## RESPONSE

**I.     Facts developed  in trial court are relevant when the interpretation and meaning of the critical allegations in the indictment are in dispute.**

By attempting to frame his appeal as limited solely to the statute and the indictment, Appellant is indirectly challenging the sufficiency of the evidence supporting the indictment. Importantly, courts have consistently *refused* to go behind the indictment when evidentiary matters are alleged.[1] As Justice Black stated:

> If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment. An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits.[2]

Appellant's arguments that Texas Penal Code Sections 36.03(a)(1) and 1.07(a)(9)(F) are facially vague and overbroad are purely legal. But when Appellant asserts a right not to be tried, except for bribery, he challenges the sufficiency of evidence in the indictment. When he argues the right to speak to his

---

[1] *See Barnes v. State*, 116 S.W.2d 408 (1938) (insufficient evidence); *Bell v. State*, 243 S.W. 1095 (1922) (illegal evidence); *Buchanan v. State*, 52 S.W. 769 (1899) (incompetent evidence).
[2] *Costello v. United States*, 350 U.S. 359, 363 (1956).

2

staff in deliberations about a veto, he challenges the admissibility of evidence used to secure an indictment. And when he argues that he is being illegally prosecuted for a valueless veto and not for the underlying dollar amount of the Public Integrity Unit funding, he refers to mixed questions of fact and law. In doing so, Appellant is seeking exactly the kind of "preliminary trial" that Justice Black warned against.

These types of challenges are distinctly different than "purely legal" claims. In this appeal, Appellant seeks to challenge the evidence before the State has even presented it. For nine months the parties have exchanged hundreds of pages of briefs on these issues.

We are no closer to a resolution.

This would not be a complicated criminal case if there were already facts in the record. The scope of the indictment covers a narrow window of conduct. The evidence largely consists of lay witness testimony. The parties have established entrenched positions: Appellant argues he has a Constitutional right to make coercive threats and veto prosecutorial appropriations, and the State argues it has an absolute right to prosecute him for doing so based on his motives.

A trial could resolve what legal briefs to this Court cannot.

After a trial, with evidence then in the record, this Court could at that time be called upon to address every legal issue raised by Appellant. However, until such evidence is in the record, this Court is faced with deciding these legal issues

by considering merely hypothetical facts and claims of concessions and admissions made by lawyers in briefs. Further, conflicting interpretations of these hypothetical facts will necessarily persist, permeating even the facial challenges to the statute.

## A.     Principles of justiciability require remand to the trial court.

A justiciable controversy must be distinguished from an advisory opinion, which is prohibited under both the Texas and federal constitutions.[3]  The distinctive feature of an advisory opinion is that it decides an abstract question of law without binding the parties.[4]  The interests of justice are advanced and an effective judgment is rendered when the Court may apply the law to a concrete set of facts.[5] "Litigation based upon hypothetical possibility rather than concrete fact is apt to be poor litigation. The demand for specificity, therefore, stems from a judicial desire for better lawmaking."[6]

In this case, after nine months of litigation, the only uncontroverted facts are that Appellant is the former Governor of Texas, that Rosemary Lehmberg is the elected District Attorney of Travis County, and that the funding for the Public

---

[3] *Texas Ass'n of Bus. v. Texas Air Control Bd*., 852 S.W.2d 440, 444 (Tex. 1993).
[4] *Id*. at 444.
[5] *Alabama State Fed'n of Labor, Local Union No. 103, United Broth. of Carpenters & Joiners of Am. v. McAdory*, 325 U.S. 450, 460 (1945)
[6] *Patterson v. Planned Parenthood of Houston & Se. Texas, Inc.,* 971 S.W.2d 439, 443 (Tex. 1998) quoting Nichol, *Ripeness and the Constitution,* 54 U. CHI. L.REV. 153, 169 (1987); 13A WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE, § 3532.3, at 147 (2d ed.1984).

4

Integrity Unit was eliminated. We also know that the offense took place in Travis County. Both sides have acknowledged that both Perry and Lehmberg are public servants. Finally, the indictment was returned within the statute of limitations. These types of facts are immutable. These types of facts are fixed. These types of facts are not subject to context or witness credibility or interpretation.

But these are not the types of facts that resolve Appellant's claims. These are the only facts for this Court to consider at this point because no other substantive hearings have been held. The trial court has been hampered thus far by Appellant's continual attempts to resist getting to the facts. While neither the State's proposed amendments to the indictment nor the Bill of Particulars alter the justiciability of Appellant's facial challenges, because all other challenges involve a mixture of facts and law, trial court developments are necessary to resolve his claims.

General principles of justiciability demand the development of a factual record. Without concrete facts to anchor legal analysis, any decision by this Court would be subject to appeal when the losing party argues that the Court decided the case on the wrong set of hypothetical facts. Any decision by the trial court on the pending motions to quash and objections to the Bill of Particulars will affect the cognizability of the as-applied challenges based upon the "face of the indictment." The State could seek to amend the indictment again. The trial court could order the State to do so. Even if Judge Richardson denies the current two pending motions to

5

quash, Appellant has the right to file additional motions to quash the indictment. Litigation in trial court will continue up until trial, and until trial, without a factual record, these will continued to be an unresolved issues.

This is why the challenges raised here "on the face of the indictment" are nonjusticiable mixed questions of fact and law at this stage of the proceedings. Justiciability concerns not only the standing of litigants to assert particular claims, but also the appropriate timing of judicial intervention.[7] A court may delay resolution of constitutional questions until a time closer to the actual occurrence of the disputed event, or when a better factual record might be available.[8] This places two principles in conflict: Appellant's claim that he has a not right to be tried, and Justice Black's opinion that the trial court is the best forum to resolve Appellant's claims.

### 1. No factual record thwarts the justiciability of the overbreadth challenge.

Trial court developments would not ordinarily matter to a facial challenge to a statute. But cases involving the First Amendment are different. In *Renne v.*

---

[7] See *Regional Rail Reorganization Act Cases,* 419 U.S. 102, 136–148 (1974); *see also State ex rel. Watkins v. Creuzot,* 352 S.W.3d 493, 504–06 (Tex.Crim.App.2011) (considering ripeness of criminal defendant's pretrial declaratory judgment claim that the State could not execute him); *Ex parte Bohannan,* 350 S.W.3d 116, 119–20 (Tex.Crim.App.2011) (analyzing justiciability of parolee's habeas claims); *Gallo v. State,* 239 S.W.3d 757, 780 (Tex.Crim.App.2007) (assessing justiciability of habeas challenge to the manner of an impending execution); *Ex parte Nelson,* 815 S.W.2d 737, 738–39 (Tex.Crim.App.1991) (per curiam) (determining applicability of an exception to mootness).

[8] *Regional Rail Reorganization Act Cases, at* 143.

*Geary*, the Court addressed the propriety of resolving a facial challenge to the constitutionality of statute without first addressing its application to a particular set of facts.[9] The Court explained, "In some First Amendment contexts, we have permitted litigants injured by a particular application of a statute to assert a facial overbreadth challenge, one seeking invalidation of the statute because its application in other situations would be unconstitutional."[10] "[T]he better course might have been to address in the first instance the constitutionality of … as applied in the context of [the voter pamphlets at issue]."[11] Justice Kennedy explained the reason behind waiting for all the facts to be developed:

> The free speech issues argued in the briefs filed here have fundamental and far-reaching import. For that very reason, we cannot decide the case based upon the amorphous and ill-defined factual record presented to us. Rules of justiciability serve to make the judicial process a principled one. Were we to depart from those rules, our disposition of the case would lack the clarity and force which ought to inform the exercise of judicial authority.[12]

Justice Scalia said the same in *Board of Trustee of State University of New York v. Fox*:

> It is not the usual judicial practice, however, nor do we consider it generally desirable, to proceed to an overbreadth issue unnecessarily-that is, before it is determined that the statute would be valid as applied. Such a course would convert use of the overbreadth doctrine

---

[9] *Renne v. Geary*, 501 U.S. 312, 323-24 (1991).
[10] *Id*. at 323, citing *Broadrick v. Oklahoma,* 413 U.S. 601 (1973).
[11] *Id.* at 324.
[12] *Id.*

from a necessary means of vindicating the plaintiff's own right not to be bound by a statute that is unconstitutional into a means of mounting gratuitous wholesale attacks upon state and federal laws. *Moreover, the overbreadth question is ordinarily more difficult to resolve than the as-applied*, since it requires determination whether the statute's overreach is *substantial,* not only as an absolute matter, but "judged in relation to the statute's plainly legitimate sweep," [] and therefore requires consideration of many more applications than those immediately before the court. Thus, for reasons relating both to the proper functioning of courts and to their efficiency, the lawfulness of the particular application of the law should ordinarily be decided first.[13]

Further, First Amendment cases involving criticism or defamation against public officials are difficult to decide – even with a factual record. Courts and scholars constantly struggle to draw a line between knowingly or recklessly false statements and uses of rhetoric, exaggeration, and ideologically-derived facts. [14] The First Amendment cases cited by Appellant regarding coercive threats involve a rich description of the words spoken, the listener's reaction, and the relationship between parties. In *N. A. A. C. P. v. Claiborne Hardware Co.* the Supreme Court

---

[13] *Bd. of Trustees of State Univ. of New York v. Fox,* 492 U.S. 469, 484-85 (1989) (emphasis added), quoting *Broadrick v. Oklahoma* at 615.

[14] *281 Care Comm. v. Arneson*, 638 F.3d 621, 636 fn. 1 (8th Cir. 2011) citing *Greenbelt Coop. Publ'g Ass'n v. Bresler,* 398 U.S. 6, 14 (1970) (allegedly false statement that city council member blackmailed someone was "no more than rhetorical hyperbole"); *Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin,* 418 U.S. 264, 284 (1974) (holding that the use of the word "traitor" could not be reasonably interpreted as a representation of fact because it was used "in a loose, figurative sense to demonstrate the union's strong disagreement with the views of those workers who oppose unionization"); Terri R. Day, *"Nasty as They Wanna be Politics:" Clean Campaigning and the First Amendment,* 35 Ohio N.U. L.Rev. 647, 652 (2009) ("Often characterized as hyperbole and overstatement, campaign speech is meant to persuade and, as such, tends toward exaggeration, to vilification ... and even to false statement.") (internal quotation omitted).

was able to review 8 months of trial testimony from over 144 witnesses.[15] The Court also included the entire text of the civil rights organizer's speech and included it in the appendix to the opinion of the Court.[16] In *Org. for a Better Austin v. Keefe* the Court had the benefit of the trial court testimony as well as copies of the leaflets at issue in the lawsuit.[17] In *Watts v. United States* the Court had the benefit of hearing the facts elicited in a jury trial. In *Watts*, the Court was able to analyze the statement "If they ever make me carry a rifle the first man I want to get in my sights is L.B.J." in the context of the political rally on the Washington Monument grounds.[18] The Court noted that the crowd broke up into "small discussion groups" and that Watts "joined a gathering scheduled to discuss police brutality."[19]

In each of these cases, the facts developed in the trial court were critical to the Court's decision. No such details are present in record in this case. While some cases may be more complicated than others, it is the *facts* which provide a foundation for the judiciary's analysis and the resulting guidance to lower courts. Courts cannot fully resolve claims having to guess at facts or glean them from an indictment. No complex issue in this appeal can be resolved simply by an exchange of assertions by the lawyers.

---

[15] *N. A. A. C. P. v. Claiborne Hardware Co.,* 458 U.S. 886, 890 (1982).
[16] *Id.,* at 934-40.
[17] *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 417 (1971).
[18] *Watts v. United States*, 394 U.S. 705, 706 (1969).
[19] *Id.*

**2.      The vagueness challenge should also be reserved until after trial.**

The State's proposed changes to the indictment do not affect a statutory vagueness challenge, and neither do trial court developments. But as with the overbreadth challenge, general principles of justiciability warrant the suggestion that as-applied challenges should be addressed first.

Again, every single case cited in Appellant's brief in support of his vagueness challenge was decided after a trial. By taking them up after the trial, an appellate court is able to decide both the as-applied challenge and the facial challenge at the same time in order to avoid piecemeal litigation. In *Long v. State*, the appellant was convicted under the stalking provision of the harassment statute and *then* advanced his claim that the statute was unconstitutionally vague on its face, as well as vagueas applied to his conduct.[20] In *Grayned v. City of Rockford*, the appellant was convicted for his part in a demonstration in front a high school; again, after his conviction, he challenged the constitutionality of two ordinances.[21] In *Ely v. State,* the appellant challenged the vagueness of the statute after the jury found him guilty of four misdemeanor convictions for deceptive business practices.[22]

---

[20] *Long v. State*, 931 S.W.2d 285, 287 (Tex. Crim. App. 1996).
[21] *Grayned v. City of Rockford*, 408 U.S. 104, 105 (1972).
[22] *Ely v. State*, 582 S.W.2d 416, 418 (Tex. Crim. App. 1979).

Even when the entire point of litigation is to challenge the constitutionality of a statute, such as in determining the meaning of "viability" in abortion cases, the appellate courts have still had the benefit of a trial.[23]  Similarly, in *Papachristou v. City of Jacksonville*, eight defendants successfully invalidated a vagrancy ordinance *after* they were convicted at trial.[24]

### B.     Appellant's as-applied claims improperly rely upon an interpretation of what is alleged in the indictment.

The phrase "face of the indictment" is used 16 times in Appellant's Brief; Appellant contends that all facts necessary for justiciability can be ascertained from the face of the indictment.  But this necessarily means that this Court must then refer to trial court developments pertaining to the indictment.

Unlike the facial challenges, Appellant's as-applied challenges are not based in pure law. "The meaning of words and phrases used in a statute is a question of pure law; and the application of the scope of a statute to specific, undisputed historical facts is a mixed question of law and fact." [25] For example, the question of voluntariness of consent in a Fifth Amendment context presents a mixed question of fact and law.  In such a case, before a factfinder could consider evidence obtained as a result of the consent, the factfinder would  first need to determine,

---

[23] *Colautti v. Franklin*, 439 U.S. 379, 384 (1979).

[24] *Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972).

[25] *Hampton v. State*, 86 S.W.3d 603, 611 (Tex. Crim. App. 2002); *see also Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997).

from the totality of all the circumstances, that the consent was voluntary.[26]  Every

Fourth Amendment search and seizure question must turn on the facts of that

particular case.[27] The same is true on questions to be determined as a matter of law,

such as whether a statement is material in a prosecution for aggravated perjury.

The three as-applied challenges raised in Appellant's writ require factual

development beyond what can be determined simply by looking to the charging

instrument.  Appellant cites *Ex parte Boetscher* for the proposition that the Court

can determine an as-applied challenge using the indictment alone.  Few cases are

as simple or unusual as *Ex parte Boetscher.* In *Ex parte Boetscher*, the Court

decided an as-applied equal protection challenge on the face of the indictment

because it was uncontroverted that the appellant lived out of state.[28] On its face, the

statute treated in-state residents differently from out-of-state residents.[29] The

appellant's out-of-state residence was the gravamen of the enhanced penalty for

criminal nonsupport of his Texas children.[30] The issue was precise. His out-of-state

residence was not subject to interpretation. The facts necessary for justiciability

could be ascertained from the face of the indictment.

*Ex parte Boetscher* is an example of a "pure law" challenge that is

---

[26] *Meeks v. State,* 692 S.W.2d 504, 510 (Tex.Cr.App.1985).
[27] *Gonzales v. State*, 648 S.W.2d 684, 687 (Tex.Cr.App.1983).
[28] *Ex parte Boetscher*, 812 S.W.2d 600, 601 (Tex. Crim. App. 1991).
[29] *Id*. at fn. 1, citing TEX. PENAL CODE § 25.05(g)(2) "An offense under this section is a felony of the third degree if the actor commits the offense while residing in another state."
[30] *Id*. at 602.

justiciable using only the language in the indictment. These are the types of challenges limited to matters like limitations issue may be resolved using only the face of the indictment. In contrast to Appellant's claims, two cases, *Phillips v. State* [31] and *Proctor v. State,* [32] illustrate that not all challenges "on the face of the indictment" are the same. Both *Phillips* and *Proctor* involved claims that prosecution was outside the statute of limitations. In those decisions, the Court of Criminal Appeals distinguished between two types of challenges: those challenges "based on facts" alleged in the indictment (like a tolling allegation), as opposed to claims that are "pure law," that show that on the face of the indictment that prosecution is absolutely barred by the statute of limitations. [33] The Court held that a "based on facts" challenge merely "gives rise to a limitations factual defense" because further factual development is required beyond simply the charging instrument. By contrast, a "pure law" challenge appears on the face of the instrument and therefore "gives rise to a statute-of-limitations bar" that constitutes a jurisdictional defect. [34] Recently in *Ex parte Heilman,* the Court overturned *Phillips'* distinction as it affected whether a statute of limitations defect can be waived. [35] But the explanation of what can be determined "on the face of the indictment" is still illustrative and demonstrates why Appellant's claims are

---

[31] *Phillips v. State*, 362 S.W.3d 606 (Tex.Crim.App.2011).
[32] *Proctor v. State*, 967 S.W.2d 840, 842 (Tex. Crim. App. 1998).
[33] *Ex parte Heilman*, 456 S.W.3d 159 (Tex. Crim. App. 2015).
[34] *Id.* citing *Phillips* at 617.
[35] *Id.*

13

nonjusticiable.

Thus, the question becomes:  Are the legal challenges in *this* appeal akin to the simple determination of whether the indictment pleads an offense within the statute of limitations, or are they more similar to more complex determinations as a matter of law, like voluntariness of consent or materiality of a statement? [36] If the answer is anything more than looking to the indictment to determine whether the prosecution is within the statute of limitations, the State should be entitled to present its evidence.

And that is exactly what we would ask this Court to allow to happen here. For nearly a century, the Court of Criminal Appeals has continuously held that pretrial writs are not be used to test the sufficiency of an indictment or to construe the meaning and application of a statute defining the offense charged in an indictment.[37]

The prosecution should be allowed to move forward to trial to present its evidence, after which, if Appellant is convicted, he can reurge his challenges in this Court with a clear factual record to elucidate the issues.  A "preliminary trial"

---

[36] *Stephenson v. State,* 494 S.W.2d 900, 904 (Tex.Cr.App.1973) (citing *Hoover v. Beto,* 439 F.2d 913 (5th Cir.1971)). *See also State v. Rosenbaum*, 910 S.W.2d 934, 947 (Tex. Crim. App. 1994), *on reh'g* (Dec. 6, 1995) ("Appellee's motion is in effect an effort to cause the judge to go behind the face of the indictment before trial to see if there is sufficient evidence to support the alleged 'materiality' element in the offense of perjury.)

[37] *Ex parte Weise,* 55 S.W.3d 617, 620 (Tex.Crim.App.2001).

such as rejected by Justice Black should not be allowed to proceed instead at this stage and in this Court.

### 1. Appellant must present evidence to be entitled to relief on his claims of Speech or Debate privilege.

Whether a governor is entitled to Speech or Debate privilege is a purely legal issue. The Court *may* determine, as a matter of law, that a governor is not entitled to ever assert a Speech or Debate privilege under the separation of powers doctrine.  However, it does not work the other way.  In order to determine that *this* Appellant - *this* governor - can indeed assert the privilege, and is therefore immune from prosecution in *this* case, requires specific facts to resolve the issue.  This is why the Bill of Particulars and potential hearings in the trial court matter.

If Appellant is eligible to assert the privilege, it is the trial court, in a hearing, that would determine if any evidence was obtained in violation of the privilege.  In *United States v. Gravel*, the Supreme Court held that a United States Senator had no testimonial privilege from being questioned by a federal grand jury about whether he distributed classified government documents because the communications were outside the scope of legislative activity.[38] The court also focused on whether the communication was "essential to the deliberations of the Senate" and whether the request by the grand jury would "threaten the integrity or independence of the Senate by impermissibly exposing its deliberations to

[38] *Gravel v. United States*, 408 U.S. 606, 624–625 (1972).

15

executive influence."[39]

The State's Bill of Particulars articulates that Appellant was not engaged in communication that would be protected under the privilege. Appellant reads the same language in the Bill of Particulars and interprets it to mean that he is protected by the privilege. But whether or not the Speech or Debate privilege applies to the conduct in *this* case is a mixed question of fact and law. The pattern is consistent with all as-applied challenges in this writ: the Court may *deny* relief to Appellant as a matter of law, but in order for the Court to grant relief there must be facts in the record to support his claims.

> 2. **Appellant must present evidence to be entitled to relief on his claim of legislative immunity.**

Whether a governor is entitled to legislative immunity is a purely legal issue. But whether or not Appellant's actions in this case were official actions or actions made in his personal capacity require development of facts in the record. Thus, further developments in the trial court are necessary for justiciability.

> 3. **Appellant must present evidence to be entitled to relief on his claim of separation of powers immunity.**

Appellant further presents a purely legal issue in his claim of immunity based on separation of powers. The question here is whether the separation of

---

[39] *Id.* at 625.

powers doctrine insulates a governor from judicial review over any of his constitutionally proscribed powers absent an allegation of bribery. Again, the Court may reject Appellant's separation of powers argument on its face without any reference to the trial court developments.

However, in addressing the as-applied challenge, the resolution of this issue depends on whether Appellant is being prosecuted for a political decision to veto an item of appropriation or, instead, for unlawfully misusing the Public Integrity funds to harm Ms. Lehmberg for not resigning. It is a question of fact, and the Bill of Particulars describes the basis for these facts in detail.

**PRAYER**

While this is not a complicated case factually, the absence of a record makes this an unnecessarily complex case legally. Appellee respectfully prays that this Court uphold the constitutionality of the statutes at issue, or, in the alternative, remand this case to the trial court until a factual record is thoroughly established.

17

Respectfully submitted,

 /s/  *Michael McCrum*
MICHAEL MCCRUM
State Bar No. 13493200
District Attorney Pro Tem
Travis County, Texas
700 N. St. Mary's St., Suite 1900
San Antonio, TX 78205
Telephone:  (210) 225-2285
Facsimile:   (210) 225-7045
michael@mccrumlegal.com


 /s/  *David M. Gonzalez*
DAVID M. GONZALEZ
Assistant District Attorney Pro Tem
Travis County, Texas
206 East 9th Street, Suite 1511
Austin, Texas 78701
Telephone:  (512) 381-9955
Facsimile:   (512) 485-3121
david@sg-llp.com

**ATTORNEYS FOR
THE STATE OF TEXAS**

18

## CERTIFICATE OF COMPLIANCE

Pursuant to TEX.R.APP. P. 9.4(i), I hereby certify that this document was generated by a computer using Microsoft Word which indicates that the word count of this document except the table of contents, index of authorities, questions presented, signature, proof of service, certification, and certificate of compliance is 4,380 words.

/s/ *Michael McCrum*
Michael McCrum

**CERTIFICATE OF SERVICE**

I hereby certify that on May 11, 2015, a true and correct copy of Appellee's Brief was served on the following parties in accordance with the requirement of the Texas Rules of Appellate Procedure via electronic filing:

David L. Botsford
Botsford & Roark
1307 West Ave.
Austin, TX 78701
(512) 479-8040 Facsimile
dbotsford@aol.com

Thomas R. Phillips
Baker Botts, L.L.P.
98 San Jacinto Blvd., Ste. 1500
Austin, TX 78701
(512) 322-8363 Facsimile
Tom.phillips@bakerbotts.com

Anthony G. Buzbee
The Buzbee Law Firm
600 Travis St., Ste. 7300
Houston, TX 77002
(713) 223-5909 Facsimile
tbuzbee@txattorneys.com

 /s/ *Michael McCrum*
Michael McCrum